MANI ELECTRICAL CONTRACTORS, Plaintiff-Appellee, v. THEODO-SIOS E. KIOUTAS *et al.*, Defendants-Appellants.

First District (6th Division) No. 1—92—2732

Opinion filed February 19, 1993.—Rehearing denied April 7, 1993.

Elsie G. Holzwarth, of Chicago, for appellants.

Nicholas C. Syregelas, of Chicago, for appellee.

JUSTICE RAKOWSKI delivered the opinion of the court:

The subject of this appeal is an action brought by Mani Electrical Contractors (plaintiff) to foreclose its mechanic's lien on property owned by Theodosis E. Kioutas and Anna P. Kioutas (defendants).

Following a trial, plaintiff was awarded $6,765.68 plus statutory interest of 5% from August 8, 1984, to the date of the order, July 19, 1991. We affirm.

On December 14, 1982, the City of Chicago issued a letter listing electrical violations relative to property owned by defendants at 54 East Scott, Chicago, Illinois. Defendants sought to remedy the violations, met with Angelo Poulos, president of plaintiff, and on February 13, 1984, the parties entered into a contract for the performance of specified electrical work.

While plaintiff never applied for a permit to perform any work at 54 East Scott, a permit for that address was issued to Goulding Electric Company.

The plaintiff performed the electrical work on the building under the permit issued to Goulding and was paid $33,000 of the $45,000 contract price. Plaintiff sued to foreclose its mechanic's lien, alleging it was owed a $12,000 balance plus $5,000 for extras. Defendants filed a countercomplaint alleging breach of contract and negligence and sought to recover the cost of completion of the work, damages caused by plaintiff, and lost rentals in the amount of $53,000.

Defendants present four issues on appeal: (1) whether the claim for the lien should be barred because plaintiff performed work under a permit issued to Goulding; (2) whether the court failed to address the issue of substantial performance and awarded damages correctly; (3) whether the court failed to address the issue of plaintiff's negligence; and (4) whether it was proper to award interest.

■ In *Federal Land Bank v. Walker* (1991), 212 Ill. App. 3d 420, 422-23, 571 N.E.2d 242, the court stated:

"Merely because a contract may violate some law or some regulation does not necessarily make that contract unenforceable. Contracts are unenforceable when the subject matter of the contract or the purpose of the contract violated the law. [Citations.] ***

The power to declare a contract illegal and unenforceable comes from two sources: (1) the common law, declared by courts; and (2) the legislative branch of government. An example of a contract that has been judicially declared illegal and unenforceable is a contract that is in restraint of trade. [Citations.] Examples of contracts that have been legislatively declared illegal and unenforceable are gambling contracts and contracts for prostitution. [Citations.]

Contracts declared illegal and unenforceable thus run the gamut from those that restrain economic freedom to those that are nefarious and immoral. From this, it is deduced that a declaration of illegality and unenforceability is principled upon a finding that the contract has a deleterious effect upon society as a whole."

The defendants argue that the trial court erred in finding that the plaintiff's claim was not barred because the plaintiff proceeded while in violation of various sections of the Chicago Municipal Code (Code). (Chicago Municipal Code §§86—16, 86—37, 86—38 (1984).) The defendants reason that because the plaintiff did not comply with these

provisions, the plaintiff acted illegally and, therefore, is not entitled to enforce its lien. The defendants rely on three provisions of the Code that allegedly rendered the plaintiff's action unlawful. Section 86—16 states:

"It shall be unlawful for any person to engage in the business of electrical contractor, as herein defined, without being registered as an electrical contractor in the manner hereinafter set forth; provided, however, that if such person is already registered for the current year in another city or village within the state of Illinois, in conformity with the state statutes, such electrical contractor shall not be required to pay a registration fee in this city." (Chicago Municipal Code §86—16 (1984).)

Section 86—37 states:

"It shall be unlawful for any person to install, alter, or repair any electrical wires or apparatus by authority of a permit issued to and for the use of some other person." (Chicago Municipal Code §86—37 (1984).)

Section 86—38 states:

"It shall be unlawful for any registered contractor to secure or furnish a permit for the installation, alteration, and repair of electrical wires and apparatus to any person not entitled to such permit under the electrical regulations of this electrical code." Chicago Municipal Code §86—38 (1984).

■ In his 29-page "Findings of Fact, Opinion and Judgment," the trial judge stated that there was no testimony from any source that established that the arrangement was illegal or violative of any Chicago ordinance. On the contrary, there was testimony that Russell and two of Goulding's workmen were involved with the work. We, however, need not address this issue because we find that even if plaintiff's conduct did violate the Code, the contract is enforceable.

The defendants heavily rely on *Bairstow v. Northwestern University* (1936), 287 Ill. App. 424, 5 N.E.2d 269. In *Bairstow*, the land which plaintiff contracted to excavate for erection of a commercial building contained approximately five acres. A 60-foot x 125-foot segment of the property was zoned commercial, but the balance was zoned residential. While plaintiff obtained a permit covering the commercial property only, he excavated the entire parcel.

The defendant claimed that the work was done without securing a building permit as required by the Evanston building code and therefore the entire contract was void. The court found that because the plaintiff knew that a permit was necessary before doing the work he was precluded from enforcing a lien on the residential segment. How-

ever, the plaintiff was entitled to a lien for the work done on the commercial segment.

*Bairstow* is distinguishable from the present situation, however, because there the plaintiff knew he needed a permit for the residential segment, yet did not get one, whereas in the case *sub judice*, the plaintiff knew he needed a permit and got one, albeit under the Goulding name. More importantly, in *Bairstow*, the contract contemplated an illegal act (the excavation and erection of a commercial structure on residential property).

In another case cited by the defendants, *Meissner v. Caravello* (1955), 4 Ill. App. 2d 428, 124 N.E.2d 615, the defendants contended that the plaintiff's failure to obtain a building permit before commencement of the improvement made the contract illegal and, therefore, the plaintiff could not enforce its mechanic's lien. The court noted that

> "[t]he contract itself contained no trace or suggestion of illegality. As stated by Williston in his work on Contracts [citation]: 'In general, unless a bargain necessarily contemplates an illegal act, it is not unenforceable, and if it is later performed in a way that involves some slight violation of law, not seriously injurious to the public order, the person performing may recover on his bargain. This principle may be stated more broadly: "Where a bargain does not in terms necessarily involve a violation of law, the fact that plaintiff performs it in a way not allowed by law, does not preclude recovery, if not seriously injurious to the public order." ' There is similar language in 12 Am. Jur., Contracts, sec. 153, p. 647: 'Accordingly, where a contract could have been performed in a legal manner as well as in an illegal manner, it will not be declared void because it may have been performed in an illegal manner, since bad motives are never to be imputed to any man where fair and honest intentions are sufficient to account for his conduct. The rule has been stated to be that if an agreement can by its terms be performed lawfully, it will be treated as legal, even if performed in an illegal manner ***.' " (*Meissner*, 4 Ill. App. 2d at 431-32.)

The court stated that the weight of authority holds that failure to obtain a building permit does not preclude recovery for work and materials furnished, and because the contract did not provide for or require the violation of any law, it was not illegal. (*Meissner*, 4 Ill. App. 2d at 432-34.) The court also noted that the building code does not prevent recovery if no permit is obtained, but does provide for penalties. *Meissner*, 4 Ill. App. 2d at 433.

In an attempt to distinguish *Meissner*, defendants note that there was nothing in the *Meissner* record to suggest that the plaintiff could not have obtained a permit, whereas *sub judice* the plaintiff could not have obtained a permit because it was not qualified to do so. Defendants' distinction, however, is one without a difference. The gravamen of *Bairstow* and *Meissner* is not whether one contractor as opposed to another could obtain a permit, but whether the issuance of a permit *to anyone* would be illegal. The question to be asked is whether the bargain necessarily contemplated an illegal bargain, not whether an otherwise legal contract is performed in a manner which involves a violation of the law.

Contrary to defendants' position is *Lavine Construction Co. v. Johnson* (1981), 101 Ill. App. 3d 817, 428 N.E.2d 1069. In *Lavine*, the plaintiff and defendant entered into a contract for building and electrical work. Defendant refused to sign a completion certificate. Plaintiff admitted that an electrical permit was not obtained. The defendant argued that the lack of a permit rendered the contract unenforceable. The trial court entered judgment for the contract price of $5,700. This was affirmed on appeal. The court stated that none of the provisions of the Code expressly prohibited the enforceability of contracts for failure to secure a required permit. (*Lavine*, 101 Ill. App. 3d at 819.) The court relied on the general rule stated in *Meissner*. This same principle was applied in *South Center Plumbing & Heating Supply Co. v. Charles* (1968), 90 Ill. App. 2d 15, 234 N.E.2d 358.

While *Bairstow* does stand for the proposition that a contract is not enforceable in a situation where there was no legal way for *anyone* to obtain a permit, such is not the case *sub judice*. Accordingly, we reject defendants' contention and find the contract to be enforceable. Parenthetically, while it does not affect our decision, we note that, like plaintiff, the contractor the defendants subsequently hired to repair the alleged damage done by the plaintiff was not properly licensed by the City of Chicago.

Defendants next contend that the trial court failed to address the issue of substantial performance. Defendants claim that the contract was not substantially performed, that the trial court did not determine the issue of substantial performance, and without this determination the trial court's decision is not understandable.

■ The court stated in *Folk v. Central National Bank & Trust Co.* (1991), 210 Ill. App. 3d 43, 46-47, 567 N.E.2d 1:

"As a general rule, although a mechanic's lien claimant must show performance of the contract as a prerequisite to enforce-

ment of the lien, substantial performance of the contract made in good faith will generally entitle the contractor to maintain his suit to enforce his lien. [Citation.] A contractor must prove that there was an honest and faithful performance of the contract in its material and substantial parts, with no willful departure from, or omission of, the essential elements of the contract. [Citation.] A contractor is not required to perform perfectly, but rather is held only to the duty of substantial performance in a workmanlike manner. [Citation.] What constitutes substantial performance is difficult to define, and whether substantial performance has been given will depend upon the relevant facts of each case. *** On appeal, the issue of whether there has been substantial performance is a question of fact, and the trial court's resolution of this question will not be disturbed unless it is against the manifest weight of the evidence."

The manifest weight of the evidence is that which is the clearly evident, plain and indisputable weight of the evidence. (*Duncan v. Cannon* (1990), 204 Ill. App. 3d 160, 164, 561 N.E.2d 1147.) In order for a finding to be contrary to the manifest weight of the evidence, an opposite conclusion must be clearly apparent. *Duncan*, 204 Ill. App. 3d at 164.

A party is entitled to recover for the work furnished under the contract, subject to any deductions by way of setoff for completing and correcting the work. (*Royal Ornamental Iron, Inc. v. Devon Bank* (1975), 32 Ill. App. 3d 101, 107, 336 N.E.2d 105.) The measure of damages is the difference between the total reasonable cost of securing performance and the contract price. *Royal Ornamental Iron, Inc.*, 32 Ill. App. 3d at 108.

In the case *sub judice*, Poulos, the president of plaintiff, and Russell, owner of Goulding Electrical Construction, testified on behalf of the plaintiff. Guagliardo, the inspector for the City of Chicago, Cannataro, who owns electrical construction businesses, and Mikolajczyk, defendants' expert who was a registered architect, registered professional engineer, and an architectural consultant, all testified for the defendants.

The city inspector testified that not all items listed in the violations letter sent to the defendants by the city had been completed at the time of his inspection, but that he approved the work as it was proceeding, the work was ongoing, and "[a]ll up to that point was done in accord with the Code and in a workmanlike manner." The trial court further noted that defendants' expert stated that 60% of

the electrical work that was required under the contract was done in accord with the Code and the contract. Cannataro, the contractor who allegedly did renovating work in all fourth-floor apartments after the plaintiff left the job, could not specify as to the cost of what he did by way of repair or completion of the alleged defects. The trial court noted that the expert's report and opinion regarding the violations of the fourth floor were "an unlikely appropriate basis for finding Plaintiff's work on the 4th floor unworkmanlike or in violation of the Chicago Building Code since his inspection was made subsequent" to complete remodeling of that floor after plaintiff left the premises.

Similarly, the trial court noted in its written order that the city inspector

> "made a number of inspections while Plaintiff's work was in progress and did not find any Code violations and the fact that the building was not cited. for any violations from the time when Plaintiff stopped working until the time this case was being heard also dulls the impact of such assertion. On the other hand, Plaintiff's admitted refusal to complete the work indicated there were 'loose ends' whether 'minor' as contended by Plaintiff's attorney in his closing argument or major as the defense would have this Court believe does leave room for levelling the charge of 'work was not done in a workmanlike manner.' "

Defendant Kioutas contended it was plaintiff's duty to clean up the premises, but admitted that she could not point out in the contract where this was stated. Mrs. Kioutas later admitted that part of her janitor's job was to do the cleanup work. Mrs. Kioutas also admitted the building was never cited for any violations since plaintiff terminated his work on the premises in 1984.

Russell, president of Goulding, testified that everything in the contract was done except for a punch list. The trial court noted that the existence of a "punch list" indicated that not all was done according to the contract. As such, the plaintiff could not recover full and final payment because the contract stated that "(w)hen the job is completed TOTAL BALANCE IS TO BE PAID IN FULL AMOUNT OF $15,000." Plaintiff admitted that he had been paid $33,000 of the $45,000 contract price. The trial court considered that plaintiff was entitled to any funds left after defendant subtracted from the $15,000 any charges paid to the contractor who finished the punch list items and any other defective work of the plaintiff.

■ The testimony presented showed that Cannataro's estimate to correct deficiencies and finish the work was $2,750. Therefore, the

plaintiff was entitled to $9,250 ($12,000 - $2,750 = $9,250). The trial court found that the evidence supported the defendants' counterclaim only to the extent of $1,775. There were also payments made to repair damage and for other services. The defendants' total expenditures amounted to $5,234.22. As such, the plaintiff was entitled to "$6765.68 [*sic*] ($12,000 - $5,234.22 = $6,765.78).

These findings of the trier of fact were detailed and specific. It was for the trial court to draw conclusions regarding the witnesses' credibility, and the trial court apparently concluded that the evidence showed that the plaintiff had substantially performed under the contract. There is substantial evidence in the record to support the trial court's findings. Accordingly, the judgment is not against the manifest weight of the evidence and will not be disturbed on appeal.

Because we conclude that the record supports the finding that plaintiff substantially completed the contract in a workmanlike manner, defendants' contention that the trial court failed to address the issue of plaintiff's negligence is without merit.

Also without merit is defendants' contention that interest should not have been awarded under the facts of this case. The language of the mechanic's liens statute is unambiguous and provides that a contractor shall have a lien for the amount due from the service, material and labor furnished "and *interest* from the date the same is due." (Emphasis added.) (Ill. Rev. Stat. 1983, ch. 82, par. 1.) It was upon this statute that the trial court awarded interest.

Defendants rely solely on *Watson Lumber Co. v. Guennewig* (1967), 79 Ill. App. 2d 377, 226 N.E.2d 270, a case dealing with former section 2 of the interest statute (Ill. Rev. Stat. 1965, ch. 74, par. 2), now included in banking and finance (Ill. Rev. Stat. 1991, ch. 17, par. 6402), which provides for interest "on money withheld by an unreasonable and vexatious delay of payment." The *Watson Lumber* court, in reversing the trial court's award of interest, held that because the dispute was substantial and in good faith, the delay in payment was not unreasonable or vexatious.

Because the trial court's award of interest *sub judice* was based upon the mechanic's lien statute (Ill. Rev. Stat. 1983, ch. 82, par.1), *Watson Lumber* has no application. Nor do defendants set forth any reason why the mechanic's lien statute does not apply. For all of the foregoing reasons, the judgment of the trial court is affirmed.

Affirmed.

McNAMARA, P.J., and GIANNIS, J., concur.