LORRAINE C. PRITZKER, Plaintiff-Counterdefendant, v. DRAKE TOWER APARTMENTS, INC., *et al.*, Defendants and Third-Party Plaintiffs (Abra Prentice Wilkin, Third-Party Defendant and Fourth-Party Plaintiff-Appellee; Frank H. Stowell and Sons, Inc., *et al.*, Fourth-Party Defendants-Appellants; Hammond Beeby and Babka, Inc., Fourth-Party Defendant).

First District (6th Division)   No. 1—94—0120

Opinion filed July 12, 1996.—Rehearing denied September 16, 1996.—Modified opinion filed September 27, 1996.

RAKOWSKI, J., concurring in part and dissenting in part.

Lord, Bissell & Brook, of Chicago (Diane I. Jennings, Kathryn G. Montgomery, and Leslie J. Rosen, of counsel), for appellant Frank H. Stowell & Sons, Inc.

Clausen, Miller, Gorman, Caffrey & Witous, P.C., of Chicago (James T. Ferrini, Douglas J. Palandech, Margaret M. Hupp, and Melinda S. Kollross, of counsel), for appellant Dubin, Dubin & Moutoussamy.

Altheimer & Gray, of Chicago (Don H. Reuben, Paul P. Biebel, Jr., Charles A. Valente, and Andrew R. Greene, of counsel), for appellee.

PRESIDING JUSTICE ZWICK delivered the opinion of the court:

We address in this case the single issue of whether the trial court abused its discretion in denying motions filed by appellants, Frank H. Stowell & Sons, Inc. (Stowell), and Dubin, Dubin & Moutoussamy (Dubin), in which Stowell and Dubin sought the imposition of Rule 137 (134 Ill. 2d R. 137) sanctions against the fourth-party plaintiff, Abra Prentice Wilkin. After careful review, we reverse and remand the cause for further proceedings.

In 1989 plaintiff, Lorraine Pritzker, filed suit against Drake Tower Apartments, Inc., the owner of the apartment building in which Pritzker lived. Pritzker alleged that certain 1973 improvements to Wilkin's thirtieth-floor penthouse apartment were causing water to leak into and damage Pritzker's twenty-ninth-floor residence. Wilkin filed a separate action against Drake in 1990, seeking, *inter alia*, a declaratory judgment that Wilkin was not responsible for specified maintenance and repair costs under the 1973 construction agreement. Drake then brought Wilkin into the Pritzker litigation as a third-party defendant, and Wilkin filed her own fourth-party complaints for contribution and indemnity against certain parties involved in the 1973 improvements. This complaint, filed August 29, 1990, named Stowell, the general contractor for the project, as well as Dubin, an architectural firm that had agreed to perform certain inspection services.

Stowell and Dubin promptly filed motions to dismiss Wilkin's complaints against them, each claiming in affidavits that the penthouse improvements had been completed in 1975 and that

Wilkin's claims were therefore barred by the 10-year construction statute of repose. See 735 ILCS 5/13—214(b) (West 1994). This section of the Code of Civil Procedure requires that claims relating to the improvement of real property be brought within 10 years after the act or omission underlying the claim. Stowell included with its motion the affidavit of Frank Stowell, one of Stowell's principals, stating that work in Wilkin's apartment was finished in 1975. Dubin's motion included construction lien waivers which had been delivered at the end of the work in 1975, as well as the affidavit of David Dubin, one of Dubin's principals. This affidavit also stated that the work in Wilkin's apartment had been completed by the end of 1975.

Wilkin contested the motions filed by both Stowell and Dubin. Wilkin ultimately avoided dismissal of her claims, in part, by filing counteraffidavits that stated that she had "personal knowledge" that the work in her apartment continued through 1980. She stated she was prepared to offer testimony to this fact if called as a witness. Wilkin subsequently filed pleadings and discovery responses also denying that the construction in her home was completed in 1975.

In 1993, after Stowell and Dubin had been involved in the case for almost three years, Wilkin was deposed by Stowell. Despite her prior affidavit and pleadings, Wilkin conceded that she had no personal knowledge to support her representations regarding the time of completion of the construction in the apartment. She stated that she had simply followed the advice of her attorneys[1] and business manager in claiming in her affidavit that construction had continued on her residence past 1975. The trial court granted summary judgment in favor of Stowell and Dubin, each of whom then moved for sanctions under Rule 137.

Both Stowell and Dubin argued in their petitions for sanctions that Wilkin had committed several Rule 137 violations, including (1) verifying and filing a time-barred complaint; (2) making an affidavit containing statements that were either knowingly untrue or not within her personal knowledge, as she had represented; and (3) tendering false responses to discovery. The petitions also detailed what Stowell and Dubin claimed to be Wilkin's improper purpose in filing her complaints against them, i.e., her desire to keep Stowell and Dubin in the litigation in hopes that they would agree to share the costs of the litigation.

The trial court denied the motions for sanctions. The court commented that, had Wilkin filed her action sooner, Stowell and Dubin

---

[1] We note that Ms. Wilkin's present counsel did not represent her in the trial court proceedings.

would have been involved in the full litigation and that "inconsistencies" like the ones noted by Stowell and Dubin regularly occur in significant lawsuits. The court also found "everything to be the custom and practice and in good faith." Stowell and Dubin appeal only the trial court's decision denying sanctions.

■ Supreme Court Rule 137 allows a court to impose sanctions against a party or attorney who files a pleading which is not well grounded in fact, is not warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law, or is interposed for any improper purpose. 134 Ill. 2d R. 137. The rule makes clear that the signature of a litigant or an attorney on a pleading is a certificate that the signing party has read the pleading and made "reasonable inquiry" into the facts alleged. Thus, the standard for evaluating a party's conduct under Rule 137 is one of reasonableness under the circumstances as they existed at the time of the filing. *Bennett & Kahnweiler, Inc. v. American National Bank & Trust Co.*, 256 Ill. App. 3d 1002, 1007, 628 N.E.2d 426 (1993).

■ The determination of whether to impose sanctions under Rule 137 rests within the sound discretion of the trial court. The decision to impose or deny sanctions is entitled to great weight on appeal and will not be disturbed on review absent an abuse of discretion. *In re Estate of Wernick* (1989), 127 Ill. 2d 61, 77-78, 535 N.E.2d 876 (1989); *Bennett*, 256 Ill. App. 3d at 1007. This general rule does not, however, preclude this court from independently reviewing the record and finding an abuse of discretion where the facts so warrant. See, *e.g.*, *Wittekind v. Rusk*, 253 Ill. App. 3d 577, 625 N.E.2d 427 (1993); *Edward Yavitz Eye Center, Ltd. v. Allen*, 241 Ill. App. 3d 562, 608 N.E.2d 1235 (1993); *In re Marriage of Irvine*, 215 Ill. App. 3d 629, 577 N.E.2d 462 (1991) (each finding the trial court's decision to deny sanctions to be an abuse of discretion).

We first address the claims made by Stowell and Dubin that the trial court committed error in failing to sanction Wilkin for filing a time-barred claim. Both Dubin and Stowell rely upon *Edward Yavitz Eye Center, Ltd. v. Allen*, 241 Ill. App. 3d 562, 608 N.E.2d 1235 (1993), for their assertion that it is sanctionable for a party and his or her lawyer to file a claim in the circuit court with knowledge that the defendant has a valid defense to the claim.

In *Yavitz*, plaintiff filed a contract claim against the defendant despite the existence of a clause in their agreement that required the parties to arbitrate any disputes that might arise between them. The court reversed the lower court's denial of sanctions, finding that even a cursory examination of the written agreement would have indicated that the challenged complaint was barred and, therefore, should never have been filed. *Yavitz*, 241 Ill. App. 3d at 569.

Wilkin responds to *Yavitz* by arguing that the case was wrongly decided. She notes that Illinois law does not otherwise require a plaintiff to anticipate affirmative defenses (*Shea, Rogal & Associates, Ltd. v. Leslie Volkswagen, Inc.*, 250 Ill. App. 3d 149, 153, 621 N.E.2d 77 (1993)), and that litigants often waive arbitration clauses such as the one at issue in *Yavitz* (see, *e.g.*, *Epstein v. Yoder*, 72 Ill. App. 3d 966, 972, 391 N.E.2d 432 (1979); *Applicolor, Inc. v. Surface Combustion Corp.*, 77 Ill. App. 2d 260, 267, 222 N.E.2d 168 (1966)). Wilkin argues that the plaintiff in *Yavitz* should not have been sanctioned "simply because he indicated his willingness to waive arbitration by filing suit and the defendant declined the invitation."

■ We will not reconsider the court's holding in *Yavitz*. The issue presented in this case is different. In *Yavitz*, the court charged the plaintiff with knowledge as to the existence and meaning of the arbitration clause. Plaintiff had negotiated the contract with the defendant and was attempting to rely on the agreement as a basis for his claim for damages. In contrast, there is nothing in this record to indicate that Wilkin had knowledge that her claim was time-barred prior to the defendants' motions to dismiss. Accordingly, we find no abuse of discretion in the court's decision to deny sanctions for Wilkin's mere act of filing a time-barred claim.

We do not reach the same conclusion with regard to the remaining claims made by Dubin and Stowell. After reviewing the record, we conclude that the trial court abused its discretion in failing to impose sanctions against Wilkin for what can only be characterized as serious and blatant violations of Rule 137. These violations resulted in Stowell and Dubin being involved in almost three years of ongoing, needless and expensive litigation.

When confronted by Stowell's attorneys in her deposition, Wilkin readily admitted that she had no basis, reasonable or otherwise, for claiming that the work on her apartment continued through 1980. She stated:

- Stowell completed its work on her apartment in 1975;
- After 1975, Stowell never did any work for her;
- Aside from the fact that construction took too long, she was not dissatisfied with the work Stowell had done;
- It was not her understanding that any of the work done by Stowell caused the leaks in Pritzker's apartment; and
- She did not know if Stowell ever visited her apartment after 1975.

When asked why Stowell had been brought into the lawsuit, Wilkin stated that it was not her decision to sue Stowell, but that she was in favor of it so that Stowell might "share the costs." When asked why

she claimed that the work in her apartment continued through 1980 when she knew the work had been completed in 1975, Wilkin stated simply that she had relied upon her representatives.

On appeal, Wilkin claims her deposition testimony merely reflects "perplexion and confusion." She argues that no evidence was presented by Stowell or Dubin to indicate that she had not made reasonable inquiry into the truth of her allegations at the times she verified that work continued in her home through 1980. She claims the trial court was therefore within its discretion in denying sanctions. She also argues the record contains documents which establish she had a reasonable basis for believing the work in her apartment continued past 1975. To this end, she relies on letters written by Stowell in 1977 which indicate that the greenhouse may have been leaking at that time, as well as documentary evidence showing Stowell installed a skylight in her apartment in 1983. With regard to Dubin, Wilkin notes that Dubin never tendered a final inspection report at the end of the construction process, as it was required to do under the terms of the 1973 construction agreement.

■ We reject Wilkin's arguments. Simply put, we see nothing in this record that might have suggested to Wilkin that the 1973 construction continued through 1980, particularly after Stowell and Dubin submitted records and depositions stating that the work ended in 1975. If anything, the letters written by Stowell in 1977 and now relied upon by Wilkin support the claim that the work had been completed more than 10 years prior to suit. In the letters, Stowell does not offer to repair defective work, as Wilkin implies, but instead, to do maintenance on the greenhouse caulking. Stowell offered to do the work at its cost "plus 10% overhead plus 10% profit." The fact that Stowell discussed the 1977 work in the context of a bid for an additional fee negates any implication that the 1977 work was a continuation of the 1973 construction. Moreover, there is nothing to suggest that the 1983 skylight construction was in any way related to the 1973 construction agreement.

Wilkin's arguments with respect to Dubin are equally spurious. Wilkin claimed in her affidavit that "during the construction period from late 1975 through at least 1980 [she] did not receive any reports whatsoever from [Dubin] regarding the progress and quality of the work." As was made clear by Wilkin's deposition testimony, however, it is not surprising that she did not receive construction reports from Dubin between 1975 and 1980. As Wilkin ultimately conceded, she knew the work in her home had been completed in late 1975 when she accepted the work and moved back into the apartment.

Despite the findings of "good faith" made by the trial court, the

record establishes that Wilkin was, at the very least, reckless in signing her counteraffidavits. Indeed, Dubin and Stowell make a strong case for concluding Wilkin deliberately lied under oath to extract an unwarranted settlement. For example, discovery showed that Wilkin began paying an increased assessment on her home in late 1975 as a result of the increase in living space which resulted from the 1973 construction. Wilkin also confirmed personal knowledge of the 1975 completion date when she filed, at the outset of her case against Drake, an affirmative defense claiming that Drake's claim against her was barred by *laches*. She stated in this pleading that "the alteration work to the apartment was completed on or about 1975." Wilkin also filed a summary judgment motion against Drake claiming that "[t]he construction was essentially completed in May 1975, and I moved back to the apartment with my family." Under such facts, we are compelled to reject the trial court's findings and hold that the court abused its discretion in failing to assess sanctions.

We are not insensitive to the demands complex civil litigation can put on both plaintiffs and defendants. Recently, this panel recognized that clients may generally rely on the advice of their counsel. *Keating v. Estate of Robert Golding*, 277 Ill. App. 3d 953 (February 9, 1996, *nunc pro tunc* December 15, 1995). In our opinion today we do not back away from this general pronouncement. We recognize that the requirements of Rule 137 can be difficult to appreciate for those unfamiliar with court pleadings and affidavits, particularly when lawyers and others are retained to "handle the details." The recognition of this basic principle cannot, however, relieve an affiant from taking personal responsibility for making a false oath or for violating the objective good-faith requirements of Rule 137. Rule 137 is deliberate in placing the responsibility on whoever signs a pleading in violation of its requirements, including the litigants. The rule is designed to be an effective deterrent against the exact type of abusive litigation practices documented by this record. If litigants such as Wilkin were able to avoid liability under the rule by simply claiming reliance on their counsel's advice, the benefits of the rule as a deterrent would be greatly undermined.

For the foregoing reasons, we reverse the judgment of the circuit court of Cook County denying the motions of Stowell and Dubin for an award of sanctions against Wilkin. We remand the cause to the circuit court for further proceedings with directions that the court

assess an appropriate penalty pursuant to the provisions of Supreme Court Rule 137.

Reversed and remanded with directions.

LEAVITT, J., concurs.[2]

JUSTICE RAKOWSKI, concurring in part and dissenting in part:
 I concur with the judgment of the majority that it was not an abuse of discretion for the trial court to deny sanctions for Wilkin's act of filing a time-barred claim under the facts of this case. I respectfully dissent, however, from that part of the majority's opinion which concludes that the trial court abused its discretion in failing to award sanctions.

The decision to award sanctions rests in the sound discretion of the trial court. Although there are facts in the record that support an award, there are also facts that cut the other way. It was for the trial court to call. The question is not how we would have decided the issue but whether the trial court's decision was an abuse of discretion. I respectfully submit that it was not. I also strongly disagree with the majority's statement that a strong case is made for concluding Wilkin deliberately lied under oath to extract an unwarranted settlement. Accordingly, I would affirm the judgment of the circuit court.

---

[2]Justice Leavitt was substituted on the panel after Justice Egan's retirement. Justice Leavitt has reviewed the briefs and the opinion filed with this court on July 12, 1996, and has otherwise fully participated in the disposition of this case.