# Illinois Official Reports

## Appellate Court

---

### *Deutsche Bank National Trust Co. v. Ivicic*, 2015 IL App (2d) 140970

---

| | |
|---|---|
| Appellate Court Caption | DEUTSCHE BANK NATIONAL TRUST COMPANY, as Trustee of the Indymac INDX Mortgage Trust 2007-AR17, Mortgage Pass-Through Certificates, Series 2007-AR17 Under the Pooling and Servicing Agreement Dated June 1, 2007, Plaintiff, v. STEVE IVICIC, THE UNITED STATES OF AMERICA, and WOODCREEK OF CLARENDON HILLS CONDOMINIUM ASSOCIATION, INC., Defendants (Law Offices of Ira T. Nevel, LLC, Appellant; Steve Dweydari, Intervenor-Appellee). |
| District & No. | Second District<br>Docket No. 2-14-0970 |
| Filed | December 23, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Du Page County, No. 12-CH-5323; the Hon. Robert G. Gibson, Judge, presiding. |
| Judgment | Reversed. |
| Counsel on Appeal | Ira T. Nevel, of Law Offices of Ira T. Nevel, LLC, of Chicago, for appellant.<br><br>Jack Kozar, Jay D. Kostecki, and Justin J. Shlensky, all of Kozar Law Office, LLC, of Elmhurst, for appellee. |
| Panel | PRESIDING JUSTICE SCHOSTOK delivered the judgment of the court, with opinion.<br>Justices Jorgensen and Spence concurred in the judgment and opinion. |

¶ 1     This case arises from a mortgage foreclosure action. After the property was sold at a sheriff's sale, the plaintiff, Deutsche Bank National Trust Company, filed a motion in the circuit court of Du Page County to vacate the sale. The trial court granted the motion. Steve Dweydari, the high bidder at the sheriff's sale, then filed motions (1) to intervene; (2) to reconsider the order vacating the sale; and (3) for sanctions against the plaintiff's attorneys, the Law Offices of Ira T. Nevel, LLC (Nevel), for filing a false pleading. The trial court denied Dweydari's motions to intervene and to reconsider its prior order. However, the trial court granted Dweydari's motion for sanctions. Nevel appeals from that order. For the reasons that follow, we reverse.

¶ 2                                BACKGROUND

¶ 3     On November 2, 2012, the plaintiff filed a complaint to foreclose a mortgage against the defendants, Steve Ivicic, the United States of America (which had a tax lien on the property), and Woodcreek of Clarendon Hills Condominium Association, Inc. (Woodcreek). On February 13, 2013, after the trial court entered judgment against the United States, and after Ivicic and Woodcreek defaulted, the trial court entered a judgment of foreclosure in the plaintiff's favor. A sheriff's sale was scheduled for June 4, 2013. However, the June 4, 2013, sheriff's sale never took place as it was canceled by the plaintiff just before the sale. The sale was eventually rescheduled.

¶ 4     On January 23, 2014, the property was sold at a sheriff's sale to Dweydari. He bid one dollar over the plaintiff's opening bid of $112,500.

¶ 5     On January 28, 2014, the plaintiff filed a motion to vacate the sale. In its motion, the plaintiff stated:

> "In preparation for the January 23, 2014 sale, Plaintiff submitted publication notices and other documents concerning the originally-set June 4, 2013 sale. Accordingly, the amount due pursuant to the judgment and proof that notice of the sale was given in accordance with 735 ILCS 5/15-1507 were not accurate."

The plaintiff further asserted that, pursuant to *Household Bank, FSB v. Lewis*, 229 Ill. 2d 173, 181 (2008), a plaintiff is ordinarily the master of its cause of action and therefore is entitled to vacate a sale prior to the trial court's confirmation of that sale. On February 7, 2014, the trial court granted the plaintiff's motion to vacate the sale.

¶ 6     On March 3, 2014, Dweydari filed a motion to intervene and a motion to reconsider the order vacating the January 23, 2014, sheriff's sale. Dweydari asserted that he should be allowed to intervene to protect his interests as the successful bidder at the sheriff's sale. He also argued that the sale should not have been vacated, because "mere inadequacy of price is not a sufficient reason to disturb a judicial sale."

¶ 7     On March 7, 2014, at a status hearing, the plaintiff indicated that its justification for vacating the sale was that the documents it submitted for the sale were related to the canceled June 4, 2013, sheriff's sale, not the January 23, 2014, sheriff's sale. The plaintiff indicated that its desire to vacate the sale had "nothing to do with the sale price."

¶ 8        On March 28, 2014, at a hearing on Dweydari's motion to intervene and motion to reconsider, the plaintiff indicated that some of the documents sent to the sheriff's office in anticipation of the January 23, 2014, sheriff's sale were proper (the notice) but others were not (the opening bid amount). In response, the trial court ordered the plaintiff to file a response to Dweydari's motion to reconsider. The trial court explained that it wanted to know the plaintiff's actual justification for seeking to vacate the sheriff's sale.

¶ 9        On April 4, 2014, the plaintiff filed a response, attaching a copy of the bid package for the canceled June 4, 2013, sheriff's sale that the plaintiff erroneously sent for the January 23, 2014, sale.

¶ 10        On April 9, 2014, Dweydari filed a motion for sanctions against the plaintiff pursuant to Illinois Supreme Court Rule 137 (eff. July 1, 2013). Dweydari asserted that the plaintiff had given contradictory justifications for vacating the sale. He argued that the plaintiff's abuse of the judicial process had caused him to incur needless attorney fees, including those to prepare and file a response to the plaintiff's "frivolous motion to vacate the sale." He asserted that, because the plaintiff's motion to vacate was not grounded in fact or law, he should be awarded attorney fees of $4,500.

¶ 11        On April 17, 2014, following a hearing, the trial court denied both Dweydari's motion to intervene and his motion to reconsider. The trial court explained that it had properly granted the plaintiff's motion to vacate the sale, because the plaintiff had presented sufficient evidence that it "came in with a bid from a prior Sheriff's Sale, didn't update that bid; and, ultimately, the bid was lower than what should have been made." The trial court scheduled Dweydari's motion for sanctions for a hearing on May 29, 2014.

¶ 12        On May 8, 2014, the plaintiff filed a response to Dweydari's motion for sanctions. The plaintiff argued that, since the trial court had denied Dweydari's motion to intervene, he was not a party to the case and therefore was not entitled to sanctions. The plaintiff further argued that certain documents related to a foreclosure are filed in the clerk's office but are not necessarily filed with the sheriff's office. Thus, its assertion that the proper documents had not been submitted to the sheriff's office was not contradicted by the fact that the proper documents were in the clerk's file. Thus, its motion to vacate the sale did not contain a false assertion.

¶ 13        On May 29, 2014, the trial court conducted a hearing on Dweydari's motion. The trial court *sua sponte* reconsidered its April 17, 2014, order. The trial court entered a written order providing that its prior order was "hereby amended *nunc pro tunc* thereby granting Steve Dweydari leave to intervene." The trial court then granted Dweydari's motion for sanctions. The trial court explained that the plaintiff's initial justification for vacating the sale was that the publication notice was improper. However, a review of the court file indicated that the publication notice was fine. The trial court found that this constituted a frivolous pleading, warranting the imposition of sanctions against Nevel. The trial court then set the matter for a prove-up.

¶ 14        On July 11, 2014, the trial court imposed as a sanction against Nevel and in favor of Dweydari the amount of attorney fees incurred by Dweydari, $4,500. Nevel subsequently filed a motion to reconsider. Following the denial of its motion to reconsider, Nevel filed a timely notice of appeal.

¶ 16 Nevel's first contention on appeal is that the trial court erred when it *sua sponte* reconsidered and changed its decision so as to allow Dweydari to intervene in the proceedings. The plaintiff argues that the trial court improperly used a *nunc pro tunc* order to alter its prior order.

¶ 17 The purpose of a *nunc pro tunc* order is " 'to supply some omission in the record of an order which was really made but omitted from the record.' " *Gill v. Gill*, 56 Ill. 2d 139, 142 (1973) (quoting *People v. Rosenwald*, 266 Ill. 548, 554 (1915)). It does not alter the actual judgment of the court. *Dauderman v. Dauderman*, 130 Ill. App. 2d 807, 809 (1970). Rather, "it merely corrects inadvertent omissions from the judgment order, and should not be entered if the omission is the result of either a deliberate decision by the judge or relates to an issue that was not presented to the judge." *Z.R.L. Corp. v. Great Central Insurance Co*., 201 Ill. App. 3d 843, 845 (1990). Upon a motion for a *nunc pro tunc* order, " '[t]he court is not called on to construe the judgment, but only to enter of record such judgment as was formerly rendered and not entered of record as rendered.' " (Emphases omitted.) *In re Marriage of Breslow*, 306 Ill. App. 3d 41, 53-54 (1999) (quoting 49 C.J.S. *Judgments* § 128a, at 201 (1997)). A *nunc pro tunc* order must be based on some note, memorandum, or memorial in the record indicating that the omission was an inadvertent clerical error. *Z.R.L. Corp.*, 201 Ill. App. 3d at 845. Any document in the record may serve as evidence of the inadvertent nature of the omission, including hearing transcripts, but the evidence must be definite and certain. *Id.*

¶ 18 There are many examples that illustrate the difference between clerical errors, which may be corrected *nunc pro tunc*, and judicial errors, which may not be corrected *nunc pro tunc*. For example, in *Brody v. Hess*, 75 Ill. App. 3d 402, 403-04 (1979), the parties to a divorce decree had agreed to a joint waiver of alimony, and the trial court failed to incorporate this waiver into the decree. The reviewing court found that the trial court could properly amend the decree *nunc pro tunc* to reflect the parties' joint waiver because the prove-up proceedings established that the parties had agreed to the waiver and that the failure to incorporate the waiver was strictly a clerical or scrivener's error. *Id.* at 404. Similarly, in *Dauderman*, the trial court amended the parties' divorce decree to read "$400.00 per month" rather than "$400.00." As the appellate court explained, the failure to include the words "per month" was clearly an inadvertent clerical or scrivener's error because the award did not match the decree absent the language "per month." *Dauderman*, 130 Ill. App. 2d at 809-10. Moreover, in *Johnson v. First National Bank of Park Ridge, V/T #205*, 123 Ill. App. 3d 823, 828 (1984), the trial court amended the judgment entered against " 'First National Bank of Park Ridge' " to provide that the judgment was entered against " 'First National Bank of Park Ridge [as trustee under trust No.] 205.' " All the other documents in the case listed the bank as the trustee, and thus the trial court's failure to list the bank as the trustee in the judgment was an inadvertent clerical or scrivener's error.

¶ 19 An example of an improper *nunc pro tunc* order is one that reverses a court's prior decision. See *Beck v. Stepp*, 144 Ill. 2d 232, 238 (1991) (trial court improperly used *nunc pro tunc* order to deny motion for summary judgment after it had previously granted it), *abrogated on other grounds*, *Kingbrook, Inc. v. Pupurs*, 202 Ill. 2d 24, 30-31 (2002).

¶ 20 Here, the trial court did not seek to correct an omission from its April 17, 2014, order. Rather, the trial court sought to change its order by granting a motion that it had previously

denied. That was improper. See *id.*; *Dauderman*, 130 Ill. App. 2d at 810. Thus the trial court's *nunc pro tunc* order was not valid.

¶ 21 Dweydari points out that, when the trial court entered the *nunc pro tunc* order, it explained that the clear implication of the overall record was that it had granted the motion to intervene; otherwise there would have been no point in considering Dweydari's motion for sanctions. However, when reviewing a trial court's clear written order, it is not appropriate to consider the trial court's subjective intentions when it entered that order. See 46 Am. Jur. 2d *Judgments* § 141 (2006) ("a nunc pro tunc order is not appropriate to rescue subjective judicial intentions when a judge failed in any way to act on those intentions in entering judgment"). Rather, where the order is clear, the trial court may not use a *nunc pro tunc* order to alter that order. *Dauderman*, 130 Ill. App. 2d at 810.

¶ 22 Because the trial court had not granted his motion to intervene, the trial court could not use a *nunc pro tunc* order to make Dweydari a party to the proceedings. Therefore, he was not entitled to any attorney fees pursuant to Rule 137. See *In re Marriage of Petrik*, 2012 IL App (2d) 110495, ¶ 34 (Rule 137 is inapplicable to nonparties.).

¶ 23 That said, we acknowledge that the trial court had the inherent authority to reconsider its ruling on Dweydari's motion to intervene. See *Stevens v. Village of Oak Brook*, 2013 IL App (2d) 120456, ¶ 37. To the extent that the trial court effectively did so, it still erred in awarding him sanctions. Rule 137 provides in relevant part:

> "Every pleading, motion and other document of a party represented by an attorney shall be signed by at least one attorney of record in his individual name, whose address shall be stated. *** The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion or other document; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. *** If a pleading, motion, or other document is signed in violation of this rule, the court, upon motion or upon its own initiative, may impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of reasonable expenses incurred because of the filing of the pleading, motion or other document, including a reasonable attorney fee." Ill. S. Ct. R. 137 (eff. July 1, 2013).

¶ 24 Because Rule 137 is penal, it must be strictly construed, with each element of a violation specifically proved. *In re Estate of J.M.*, 287 Ill. App. 3d 110, 116 (1997). When a party asks that Rule 137 sanctions be imposed, that party bears the burden of proof. *Yassin v. Certified Grocers of Illinois, Inc.*, 133 Ill. 2d 458, 467 (1990). The party moving for sanctions must show that the opposing party made false allegations without reasonable cause. *In re Estate of Wernick*, 127 Ill. 2d 61, 77 (1989). The trial court must decide whether the allegations were warranted by existing law or a good-faith argument for a change in existing law, or whether the allegations were merely meant to harass or unduly delay the proceedings. *Casey v. Jerry Yusim Nissan, Inc.*, 296 Ill. App. 3d 102, 107 (1998). When determining the reasonableness of the allegations, the trial court must also consider whether they were material to the cause. *First of America Trust Co. v. First Illini Bancorp, Inc.*, 289 Ill. App. 3d 276, 289 (1997). The

attorney's conduct must be assessed by an objective standard; subjective good faith is not sufficient. *Burrows v. Pick*, 306 Ill. App. 3d 1048, 1051 (1999).

¶ 25 A trial court's determination is afforded considerable deference, but it does not preclude a reviewing court from independently reviewing the record and finding an abuse of discretion if the facts warrant. *Pritzker v. Drake Tower Apartments, Inc.*, 283 Ill. App. 3d 587, 590 (1996). When reviewing a decision on a motion for sanctions, the primary consideration is whether the decision was informed, was based on valid reasoning, and follows logically from the facts. *Thomas Hake Enterprises, Inc. v. Betke*, 301 Ill. App. 3d 176, 182 (1998).

¶ 26 Here, in its motion to vacate the sale, the plaintiff essentially alleged that it had made a mistake. The plaintiff also pointed out that under the controlling law (*Household Bank*, 229 Ill. 2d at 181) it was the master of its cause of action and therefore had the right to vacate the sale. Based on those allegations, the trial court properly granted the motion to vacate the sale.[1] The trial court therefore abused its discretion in sanctioning Nevel for filing the motion. To hold otherwise would frustrate the purpose of Rule 137, which provides that only those who file frivolous or false pleadings should be sanctioned. *Dunn v. Patterson*, 395 Ill. App. 3d 914, 923-24 (2009).

¶ 27 In so ruling, we reject Dweydari's argument that Nevel should be sanctioned for giving the trial court conflicting explanations as to why the plaintiff wanted to vacate the sale. Verbal misstatements are not a ground for sanctions under Rule 137. See *Ibe v. Lee*, 264 Ill. App. 3d 800, 806 (1993) ("Rule 137 only concerns written documents ***.").

Dweydari further argues that, because the plaintiff gave various explanations of the nature of its mistake, the trial court was forced to conduct additional proceedings to determine the real reason why the plaintiff wanted to vacate the sale, and Dweydari was forced to incur additional legal fees. Even if Rule 137 applied to verbal misstatements, Dweydari's argument would still be baseless. First, Dweydari's status as the high bidder at the sale did not necessarily give him the right to contest the plaintiff's motion to vacate. See *Household Bank*, 229 Ill. 2d at 181 (being the highest bidder at a judicial sale does not confer on the bidder any legally cognizable interest in the property). Thus, any costs he incurred to determine why the plaintiff wanted to vacate the sale were incurred voluntarily and he is not entitled to reimbursement of his attorney fees. Moreover, the "real reason" why the plaintiff wanted to vacate the sale was not material, as evidenced by the fact that the trial court granted the motion to vacate and denied the motion to reconsider. As the real reason was not material, the trial court should have also denied Dweydari's motion for sanctions on that basis. See *First of America Trust Co.*, 289 Ill. App. 3d at 289.

¶ 28 CONCLUSION

¶ 29 For the foregoing reasons, the judgment of the circuit court of Du Page County is reversed.

---

[1] A review of the record reveals that the trial court was concerned about the nature of the plaintiff's mistake because it did not believe that a bank has an absolute right to vacate a sale. While maintaining that it does have an absolute right under *Household Bank*, the plaintiff indicated that it would exercise that right sparingly, otherwise "[n]o one would ever bid at our sales." Based on the posture of this case, we need not address whether a bank has an absolute right to vacate a sale, because here the plaintiff did have proper grounds to vacate the sale.

¶ 30          Reversed.