CHARLES McCORKLE, JR., Plaintiff-Appellant, *v.* BURTON I. WEINSTEIN, Defendant-Appellee.

First District (3rd Division)   No. 76-307

Opinion filed June 29, 1977.

Dolores B. Horan, of Chicago, for appellant.

Burton I. Weinstein, *pro se*, of Boehm & Weinstein, Chartered, and Jerold B. Schnayer, both of Chicago, for appellee.

Mr. JUSTICE McNAMARA delivered the opinion of the court:

The plaintiff, Charles McCorkle, Jr., a court reporter, brought this action against the defendant, Burton I. Weinstein, an attorney, for court reporting services rendered in the amount of $1,974.45. At a trial without a jury, the trial court at the conclusion of plaintiff's case entered judgment in favor of the defendant. In so holding, the court specifically found that defendant had been retained as an attorney by a client and had acted as an agent for that client in requesting plaintiff to furnish court reporting services; that the client was known to plaintiff at the time said order had been placed, and the client's name was disclosed by defendant or his employee to plaintiff or his employee; and that plaintiff knew defendant was an attorney and agent and as such engaged plaintiff's services. The court also found that at no time did the defendant agree to become personally liable for plaintiff's services. It is undisputed between the parties that plaintiff rendered court reporting services in the amount sought.

The defendant testified as an adverse witness under section 60 of the Civil Practice Act that he represented his brother, Lawrence Weinstein, in seeking a variance permit before the Illinois Pollution Control Board. In such capacity, defendant requested plaintiff to furnish two discovery depositions. Defendant also requested plaintiff to render his ordinary services in hearings before the board. Defendant believed that the request had been made by telephone, but he did not recall whether it was he or someone from his office who had made the call. The pollution board had informed defendant that plaintiff had an arrangement with it, and the board instructed defendant to use plaintiff's services. The defendant had used plaintiff's services in prior matters. When the request for court reporting services was made, plaintiff was advised that defendant's client was Lawrence Weinstein and that Niles Savings and Loan was an additional party. Defendant's client Lawrence won the variance but, because of the time consumed and change in interest rates, the project did not proceed and defendant's brother sustained a vast financial loss. Defendant never received any legal fees, and such fees are still due and owing. Defendant sent many copies of plaintiff's bill to his brother, but received no payment. Niles Savings had abandoned the petition in its early stages, and defendant had never forwarded plaintiff's bill to it. Defendant received express permission from his brother in hiring plaintiff and in engaging the services of expert witnesses. Because of the financial plight of defendant's brother, defendant's father had paid the bills of some of the expert witnesses. Niles Savings had paid for the printing of the original petition. The petition may have named Spanish Court Condominiums as a party, but defendant did not represent its residents.

Franklin Savings and Loan had lent money to Niles Savings in the project, but did not appear as a party in the petition.

The plaintiff testified that he had not taken the court reporting orders in question personally. Plaintiff's records indicated that defendant or someone from his office telephoned one of plaintiff's employees requesting the services. Plaintiff's records indicated that defendant should be billed at his office. The bills sent out by plaintiff on their face indicated that defendant was the principal. Defendant never objected to such a designation. Plaintiff knew that defendant was an attorney and plaintiff assumed that defendant represented a client. Plaintiff had telephone conversations with defendant in trying to collect the bill. Defendant told plaintiff that it was his brother's bill, and that it was not his obligation. However, defendant told plaintiff that he was trying to get the bill paid. Defendant never pledged, either orally or in writing, to be personally responsible for the court reporting services rendered.

Before entering judgment for the defendant, the trial court commented that at the time of the entry into the contract, all of the principals' names had not been disclosed, but they were learned at a later time.

■■■ Citing what he concedes to be a minority of jurisdictions, *Judd & Detweiler, Inc. v. Gittings* (1915), 43 App. D.C. 304; *Burt v. Gahan* (1966), 351 Mass. 340, 220 N.E.2d 817; *Roberts, Walsh & Co. v. Trugman* (1970), 109 N.J. Super. 594, 264 A.2d 237; *C. C. Plumb Mixes, Inc. v. Stone* (1971), 108 R. I. 75, 272 A.2d 152, plaintiff initially contends that the promise of the attorney to pay for such services as the court reporter furnished here has been implied from the conduct of the parties, custom, and a consideration of the nature of the attorney's role in litigation and society generally. However, in Illinois the law concerning nonliability of attorneys or other agents for services they request pursuant to their representation of clients is set forth in *Petrando v. Barry* (1955), 4 Ill. App. 2d 319, 322, 124 N.E.2d 85, where a printer unsuccessfully sued an attorney for the cost of briefs and abstracts he had prepared:

> " 'Where an agent in making a contract discloses his agency and the name of his principal, or where the party dealing with the agent knows that the agent is acting as an agent in making the contract, the agent is not liable on the contract unless he agrees to become personally liable.' [Citations.]"

The *Petrando* court also relied on the rule as stated in Mechem's Outlines of the Law of Agency, sections 612, 622 (3d ed.):

> " 'But the relation of the attorney to his client, in some of its aspects, is a relation of agency, and is, in general, governed by the same rules which apply to other agencies. * * *'
>
> 'So the attorney is not liable ordinarily to third persons upon the

contracts which he makes for his client, where his agency is disclosed, and the attorney does not pledge his personal responsibility.' " (4 Ill. App. 2d 319, 322.)

(See also *International Service Corp. v. Ooms* (1969), 105 Ill. App. 2d 391, 245 N.E.2d 571.) In that case, the court held that plaintiff had no cause of action against an attorney when it was employed to do some investigative work for a client of the attorney.

■■ In the present case, the evidence adduced strongly supports the judgment of the trial court that defendant's agency was disclosed, that his principal was known to the plaintiff at the time the order was placed, and that at no time did plaintiff agree to become personally liable or assume any obligation to become bound for the services rendered by plaintiff for his client and principal. Defendant testified that plaintiff's office had been called, had been given the names of the parties and the dates for the services to be performed, and that plaintiff had been informed that it was a matter involving the pollution control board. Defendant also testified that he had received the express approval of his client to engage the court reporter. On the other hand, plaintiff admitted that he knew that defendant was an attorney and he assumed that defendant was representing a client. Plaintiff also stated that defendant at no time agreed to become personally liable for the obligation. We find it of no significance that on the face of the bills mailed, plaintiff placed defendant's name as principal. We find that the testimony in the present case places it directly under the rule enunciated in *Petrando*. The plaintiff invites us to reject *Petrando* in favor of the implied promise theory. However we agree with the logic and rationale set forth in *Petrando*, and we adhere to its principle.

Plaintiff next maintains that the trial court committed reversible error in not permitting plaintiff to testify as to his custom and as to the custom and usage of other court reporters in accepting orders to perform services requested by attorneys on the basis of the attorneys' known credit. Plaintiff also argues that the trial court erred in limiting and striking the testimony of an attorney concerning his custom and usage in hiring and paying court reporters.

Attorney John Treacy testified that he was primarily engaged in the defense of injury suits for insurance companies who are not named in the suits and who do not wish to be acknowledged as part of the suit. Mr. Treacy also testified that he maintained a continuing relationship with the insurance company clients and would advance court reporter expenses and be reimbursed during his regular billing schedule. The trial court sustained defendant's objection and struck Mr. Treacy's testimony on the basis that his practice was completely different from that involved in the

present cause and because plaintiff was attempting to secure testimony from him beyond his own practice.

■■ These contentions of plaintiff may be disposed of summarily. The proposed testimony was an attempt to prove circumstantially that defendant by virtue of custom and usage impliedly promised to become personally liable for the court reporting services. The testimony as to custom and usage could not vary the facts that in the present case the attorney was an agent, that his principal was disclosed, and that the attorney had not personally pledged himself to be responsible for the debt. (*Petrando v. Barry.*) The trial court did not commit reversible error in limiting and striking the testimony of plaintiff's expert witness and in not permitting plaintiff to testify as to custom and usage.

For the reasons stated, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

JIGANTI and McGILLICUDDY, JJ., concur.