DR. SAMUEL CLARK, Plaintiff-Appellee, *v.* WILLIAM D. MADDUX, Defendant-Appellant.

Second District   No. 82—978

Opinion filed October 5, 1983.

Bruce M. Lane, of William D. Maddux & Associates, of Chicago, for appellant.

Jack F. Kuhlman and Deborah M. Scott, both of Collis & Kuhlman, Ltd., of Hinsdale, for appellee.

PRESIDING JUSTICE SEIDENFELD delivered the opinion of the court:

The plaintiff, a medical doctor, sued defendant, a lawyer, to recover a fee for review of medical information in connection with a medical malpractice case. The defendant appeals from the judgment of $4,350 and costs entered for the plaintiff, contending that he acted for a disclosed principal, his client, therefore was not personally liable.

Motions for summary judgment on the pleadings and depositions were denied. At trial plaintiff testified that he had a discussion with Shelley Gardner, who identified herself as an attorney from defendant's office. Gardner said the firm represented a case that she wished to discuss; he agreed to review the records involved in the case. He testified that there was "no real indication who was going to pay" his fee, but that it was his "assumption" that defendant's office would pay "since she agreed to the fee." He stated that at the time of conversation, there was no discussion of whether a suit had been filed; only that the firm represented the patient. He did testify, however, that "the malpractice case was directed against a doctor," naming him; that there was a "pending suit"; and that Gardner "indicated that they were suing a physician ***."

Gardner testified that she told Clark that Jenkins was a poor woman who was frequently unable to work. She testified that the firm's practice is to explain to the client that although costs may be advanced, the client is ultimately responsible. She testified that, in her conversation with plaintiff, she told him that she represented Arnetta Jenkins, who had a claim against the named doctor. She identified herself as an attorney working on behalf of Jenkins and informed Clark that a lawsuit had been filed. She never agreed to become personally liable for the plaintiff's services or to make the defendant personally liable. She had a conversation with Jenkins within two weeks after meeting with Clark; she gave Jenkins a status report, told her she had retained a physician, and, she was "sure,"

she told her what his charges were.

In his discovery deposition, some of which was read into evidence, defendant admitted that his firm had not asked Arnetta Jenkins to reimburse the firm for costs, as she would not be able to afford it.

Also in evidence was a letter sent by defendant in response to plaintiff's bill, over Gardner's signature. In substance the letter confirmed that an hourly charge of $300 had been agreed upon but protested the extensive literature research and medical report as allegedly not needed or authorized. The letter also stated that in the experience of the attorneys they had never been previously billed for secretarial copying services, and that the bill was "far in excess of the normal for initial interviews." An adjustment was requested.

■ The long settled rule in Illinois is that "[w]here an agent in making a contract discloses his agency and the name of his principal *** the agent is not liable on the contract unless he agrees to become personally liable." (*Chicago Title & Trust Co. v. De Lasaux* (1929), 336 Ill. 522, 526.) The rule has been applied in various cases involving attorneys. In *Petrando v. Barry* (1955), 4 Ill. App. 2d 319, 322-23, a printer sued an attorney for the cost of printing briefs, abstract, petition for rehearing, and petition for leave to appeal. The name of the attorney's client appeared on the cover pages of the printed materials and the plaintiff's business largely was of printing such materials. In holding for the attorney the court noted that the attorney-client relationship in some of its aspects is a relationship of agency, and that the printer was necessarily aware of the attorney's representative capacity. The fact that the plaintiff had billed the attorney or that the attorney rather than the client placed the printing order was held not critical, absent proof that the credit was given expressly or exclusively to the attorney with further proof that he intended to assume personal liability. In *International Service Corp. v. Ooms* (1969), 105 Ill. App. 2d 391, 395-96, the plaintiff sued the defendant attorney for investigative work in a civil action, performed at the attorney's request. The court, noting the applicability of agent-principal rules to the attorney-client relationship, held that the defendant was not personally liable because he employed plaintiff while acting as an attorney for a client and the plaintiff was aware of this relationship. It made no difference that the plaintiff dealt directly with the defendant and not with the client. In *McCorkle v. Weinstein* (1977), 50 Ill. App. 3d 661, 662-64, the plaintiff, a court reporter, sued an attorney for the value of court reporting services rendered in connection with a proceeding before the Pollution Control Board. The court affirmed a holding for the defendant even though the defendant was billed for

the services and the defendant had initially requested the services. The court expressly rejected an argument also made by the plaintiff in this case that the promise of the attorney to pay be implied from the conduct of the parties, custom, and a consideration of the nature of the attorney's role in litigation and society generally. (50 Ill. App. 3d 661, 663.) In *Associated Claims Service v. Rinella & Rinella* (1979), 79 Ill. App. 3d 1023, 1027-28, a law firm employed the plaintiff to serve subpoenas in a case. The plaintiff sued to recover for its services but the court held that the law firm was not liable because it employed plaintiff while acting as an agent for a client, a disclosed principal.

■ Plaintiff's reliance on *Chapman v. Diedrich* (1975), 26 Ill. App. 3d 365, is misplaced. *Chapman* involved a factual situation in which the authority of the agent to incur the architect's services was in dispute. It is clear that an agent making a contract which he has no authority to make binds himself personally according to the terms of the contract. (*Zamouski v. Gerrard* (1971), 1 Ill. App. 3d 890, 896-97.) There is nothing in the record in this case to show that the service was unauthorized, and in fact the contingent fee agreement contains the usual provision that in the event it became necessary for the attorney to advance monies with reference to the performance of legal services, the client agrees to reimburse the attorney.

■ There is no doubt that Gardner told plaintiff that defendant was representing Arnetta Jenkins. Her name also was on the medical records given to plaintiff. Plaintiff admitted that Gardner told him that defendant's firm was representing Jenkins and, in fact, plaintiff conceded on cross-examination that he was told that a suit had been filed. Gardner testified that she told plaintiff that defendant represented Jenkins and that a suit had been filed. There was no showing, and no finding, that defendant had taken himself out of the disclosed principal rule by agreeing to be personally liable. Plaintiff testified only that he "assumed" that defendant would be liable. Gardner testified that she told plaintiff that Jenkins would ultimately pay. The letter from Gardner to Clark contests the reasonableness and propriety of the fee, but it is not inconsistent with the position that, in accordance with the employment agreement, Jenkins was remaining liable although defendant was advancing costs. And finally, there was no evidence that the defendant was unauthorized to secure the plaintiff's services. Defendant was thus not personally liable for the plaintiff's charges.

■ We do not consider defendant's further claim that the trial court erred in denying his motion for summary judgment. After an

evidentiary hearing a prior order denying summary judgment is not reviewable, any error in the denial being merged in the subsequent trial. *Banwart v. Okesson* (1980), 83 Ill. App. 3d 222, 225. See also *Casson v. Nash* (1977), 54 Ill. App. 3d 783, 788.

The judgment of the circuit court of Du Page County is reversed.

Reversed.

REINHARD and HOPF, JJ., concur.