[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, a licensed physician, filed a three count revised complaint against the defendants, Dennis McKeon, Joan McKeon, and their former attorney, Stephen F. Donahue. The plaintiff alleges that from September 7, 1988 to November 4, 1988, he provided medical services to the McKeons' minor daughter, Elizabeth McKeon. On August 16, 1989, Attorney Donahue, the attorney representing the McKeons in their personal injury action rising out of Elizabeth's injuries, sent a letter to the plaintiff stating that he would "protect" the plaintiff's fee out of any settlement proceeds received on behalf of the McKeons. On December 1, 1989, the plaintiff sent a bill to the liability carrier involved in the underlying personal injury action in the amount of $4,565.00. The McKeons' case settled for an undisclosed amount and a settlement draft was sent to Attorney Donahue on behalf of the McKeons. The plaintiff then sent his bill to Attorney Donahue; to this date, the bill has not been paid.
In the first count of the revised complaint, the plaintiff alleges that the letter of protection sent by Attorney Donahue to the plaintiff created a contract between them. The plaintiff alleges that Attorney Donahue breached this contract because he has failed to pay the plaintiff's bill.
In the second count of the revised complaint, the plaintiff alleges that the McKeons requested that the plaintiff send his bill to the Commercial Union Insurance Company, and that he did so. The plaintiff claims that his "bill" was "paid to" the McKeons as part of the settlement of their personal injury claim, that they have failed to pay him, and that they have therefore breached an oral contract with him.
In the third count of the revised complaint, the plaintiff CT Page 5325-A asserts a claim for unjust enrichment against all defendants. According to the plaintiff, the defendants have received the settlement proceeds but have not compensated him for his services. Therefore, claims the plaintiff, the defendants have been unjustly enriched.
Attorney Donahue has filed an interpleader counterclaim against the plaintiff and an interpleader crossclaim against the McKeons stating that he has no interest in the proceeds received by him from Commercial Union. Attorney Donahue is willing to pay the disputed sum to whichever party the court finds is entitled to receive it.
The McKeons have filed an answer and special defenses. In their first special defense, the McKeons assert that the plaintiff's action is barred by the applicable six year statute of limitations. The McKeons also filed an answer to Attorney Donahue's interpleader crossclaim admitting that Attorney Donahue has no interest in the settlement proceeds held in his possession.
The plaintiff has filed a motion for summary judgment[1]
together with his affidavit, a copy of his billing documents and a copy of the letter sent to him by Attorney Donahue dated August 16, 1989. The McKeons also have filed a motion for summary judgment, together with Joan McKeon's supporting affidavit.
"Practice Book § 384 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." (Internal quotation marks omitted.) Barrettv. Danbury Hospital, 232 Conn. 242, 250, 654 A.2d 748 (1995). "The party seeking summary judgment has the burden of showing the absence of any genuine issue as to all the material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law." (Internal quotation marks omitted.)Suarez v. Dickmont Plastics Corp., 229 Conn. 99, 105,639 A.2d 507 (1994).
The plaintiff states in his affidavit that he treated Joan and Dennis McKeons' minor daughter, Elizabeth, in the emergency room at Bridgeport Hospital on September 7, 1988, for injuries resulting from multiple dog bites. He continued to treat Elizabeth until November 4, 1988. The plaintiff attests that his CT Page 5325-B fee amounted to $4,565.00 and that Joan McKeon told him to submit his bill to "the liability insurance carrier", Commercial Union Insurance Companies. According to the plaintiff, Joan McKeon stated that his bill would be paid out of the funds received from Commercial Union. On November 16, 1988, Commercial Union sent a letter to the plaintiff indicating that he should send a report of Elizabeth's injuries to Commercial Union and a request for billing information. The plaintiff attests that he sent these documents to Commercial Union.
On August 16, 1989, the plaintiff received a letter from Attorney Stephen Donahue, the attorney representing the McKeons in the underlying dog bite suit. The letter states that Attorney Donahue's law firm would "protect your bill out of the proceeds of any favorable settlement we may be able to effect on behalf of our client." In his affidavit, the plaintiff states that in November, 1989, he resubmitted all of the requested documents to Commercial Union and in April, 1990 he sent another copy of his bill to Attorney Donahue. According to the plaintiff, Commercial Union settled the McKeons' claim and forwarded the cash award to Attorney Donahue. The plaintiff's bill has never been paid and Attorney Donahue still possesses the disputed settlement proceeds.
Joan McKeon's affidavit in support of the McKeons' motion for summary judgment and in opposition to the plaintiff's motion states that when she brought Elizabeth to Bridgeport Hospital on September 7, 1988, she and her husband requested that the hospital call a physician who participated in their health care plan, Physician Health Services (PHS). Joan maintains that the plaintiff agreed to treat Elizabeth pursuant to their PHS health plan. The McKeons then filled out a "new patient information" form for the plaintiff listing PHS as their insurance. In addition, the McKeons advised the plaintiff that they possessed secondary insurance with Aetna through Dennis McKeon's employment. On the new patient information form, the McKeons also indicated that their sister-in-law's homeowner's policy with Commercial Union may provide liability coverage for Elizabeth's injuries. Joan McKeon states in her affidavit that she signed an authorization allowing the plaintiff to submit the pertinent medical records to Commercial Union in order to document Elizabeth's personal injury claim.
According to Joan McKeon's affidavit, she and her husband never received a bill for the plaintiff's services. They CT Page 5325-C therefore assumed that PHS had paid him. Joan McKeon states that when Attorney Donahue received the plaintiff's bill in 1990, she and her husband contacted PHS and PHS agreed to process the plaintiff's bill. Joan avers that she and her husband repeatedly requested the plaintiff to send his bill to PHS but to date he has not done so. Joan further attests in her affidavit that she instructed Attorney Donahue not to disburse any monies to the plaintiff because the plaintiff failed to honor his agreement to care for Elizabeth under the PHS plan.
 I
The plaintiff claims that the court should grant summary judgment in his favor against Attorney Donahue because Attorney Donahue is contractually liable to the plaintiff pursuant to his "letter of protection."[2]
Attorney Donahue's letter to the plaintiff states as follows:
"Re: Elizabeth McKeon
Dear Dr. Gianetti:
 Please be advised that this office will protect your bill out of the proceeds of any favorable settlement we may be able to effect on behalf of our client.
 I would appreciate it if you would send me a copy of your bill showing all charges and payments to date.
Very truly yours,
 s/ Stephen F. Donahue
SFD/cw"
The elements of a traditional common law contract are an offer, acceptance and consideration. Reynolds v. Owen,34 Conn. Sup. 107, 110 (1977). Here, there is no evidence either of acceptance or consideration. Compare Frucht v. Garcia, 44 Misc.2d 52,252 N.Y.S.2d 825, 826-27 (1964), in which a formal letter agreement stated that money would be paid to the physician from settlement proceeds for services fairly contemporaneously rendered. "A consideration has been defined as a benefit to the CT Page 5325-D party promising, or a loss or detriment to the party to whom the promise is made. Cook v. Bradley, 7 Conn. 57, 62; Lewis v.Phoenix Mutual Life Ins. Co., 39 Conn. 100, 106." Finlay v.Swirsky, 103 Conn. 624, 631, 131 A. 420 (1925).
The Connecticut Supreme "[C]ourt has recognized, however, the `development of liability in contract for action induced by reliance upon a promise, despite the absence of common-law consideration normally required to bind a promisor; see Restatement (Second), Contracts § 90 (1973).' Sheets v. Teddy'sFrosted Foods, Inc., [179 Conn. 471, 475, 427 A.2d 385 (1980)];Hebrew University Assn. v. Nye, 148 Conn. 223, 232, 169 A.2d 641
(1961); see A. Corbin, [Contracts (1963)], § 194, p. 193. Section 90 of the Restatement Second [of Contracts] states that under the doctrine of promissory estoppel `[a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise.' A fundamental element of promissory estoppel, therefore, is the existence of a clear and definite promise which a promisor could reasonably have expected to induce reliance. Thus, a promisor is not liable to a promisee who has relied on a promise if, judged by an objective standard, he had no reason to expect any reliance at all. E. Farnsworth, supra, 2.19, p. 95." D'Ulisse-Cupo v. Board of Trustees of NotreDama High School, 202 Conn. 206, 213, 520 A.2d 217 (1996). Whether a reasonable person in Attorney Donahue's position should reasonably have expected to have induced action or forbearance by the plaintiff and whether he, in fact, induce action or forebearance are questions of fact not resolved in the plaintiff's moving papers. Williams Ford, Inc. v. HartfordCourant Co., 232 Conn. 559, 579-580, 657 A.2d 212 (1995); Flaxmanv. Capitol City Press, Inc., 121 Conn. 423, 430, 185 A. 417
(1936).
Moreover, the plaintiff's motion for summary judgment must be denied based on principles of agency. The attorney-client relationship, it is well-settled, is one of agency. Kubeck v.Foremost Foods, Co., 190 Conn. 667, 673 n. 6, 461 A.2d 1380
(1983). It is also a settled rule of law that an "`agent is not liable where, acting within the scope of his authority, he contracts with a third party for a known principal.' Scribner v.O'Brien, Inc., 169 Conn. 389, 404, 363 A.2d 160 (1975); seeBehlman v. Universal Travel Agency, Inc., 4 Conn. App. 688, 690,496 A.2d 962 (1985) (`[a]n agent, by making a contract only on CT Page 5325-E behalf of a competent disclosed principal whom he has the power to bind, does not thereby become liable [on the contract] for [the principal's] nonperformance'). Under the rules of agency, `[u]nless otherwise agreed, a person making or purporting to make a contract with another as agent for a disclosed principal does not become a party to the contract.' 2 Restatement (Second), Agency § 320 (1958)." Rich-Taubman Associates v. Commissioner ofRevenue Services, 236 Conn. 613, 619, 674 A.2d 805 (1996). This doctrine has been applied in the context of the attorney-client agency relationship. Cf. Annot., "Attorney's Personal Liability For Expenses Incurred in Relation to Services for Client," 66 ALR4th 256 § 8; Clark v. Maddux, 118 Ill. App.3d 546,454 N.E.2d 1179, 1181 (1983). Attorney Donahue's letter to the plaintiff represented that he would protect the plaintiff's bill out of any settlement made "on behalf of our client" and, in the letter's "re" line, identified the client as Elizabeth McKeon. At the very least, the plaintiff has not established any facts which would take this case out of the ambit of this doctrine of agency law or which establish that Attorney Donahue was acting outside the authorized scope of his agency. On summary judgment, "[t]he burden of establishing the absence of a genuine issue of material fact and the entitlement to recovery as a matter of law lies with the moving party"; Zapata v. Burns, 207 Conn. 496, 502,542 A.2d 700 (1988); here, the plaintiff.
For these reasons, the plaintiff's motion for summary judgment as to the defendant Attorney Donahue is denied.[3]
 II
The plaintiff also moves for summary judgment on Attorney Donahue's interpleader counterclaim. "[F]our conditions are necessary to entitle a stakeholder . . . to maintain a bill of interpleader: (1) the same thing, debt, or duty must be claimed by both or all of the parties against whom the relief is demanded; (2) all their adverse titles on claims must be dependent, or be derived, from a common source; (3) the plaintiff must not have or claim any interest in the subject matter; and (4) the plaintiff must have incurred no independent liability to either of the claimants, but must stand indifferent between them merely as a stakeholder." (Internal quotation marks omitted)Crozier v. Zaboori, 14 Conn. App. 457, 459-60 n. 2, 541 A.2d 531
(1988). For reasons already stated, a genuine issue of material fact exists as to whether Attorney Donahue has incurred liability to the plaintiff. The plaintiff's motion for summary judgment on CT Page 5325-F Attorney Donahue's interpleader counterclaim is denied.[4]
 III
In his motion for summary judgment against the McKeons, the plaintiff argues that they are liable to him for his medical fees pursuant to § 46b-37.[5] The McKeons argue, in opposition, that they cannot be held responsible for the plaintiff's fees because they requested the plaintiff to perform his services pursuant to their PHS health plan, and according to the PHS contract, the McKeons cannot be held liable for a PHS participating physician's fees.
The parties have not submitted the PHS health services contract, but the plaintiff has attached a PHS document to his memorandum of law in opposition to the McKeons' motion for summary judgment. Paragraph six of this document states, "PHS-participating physicians have agreed to accept as full payment the amount of reimbursement that has been established for each procedure. PHS members must not be billed for the difference, if any, between your usual fee and the established payment from PHS. PHS members may be billed only for services excluded from coverage by PHS policy and for the limited copayments, deductibles, or coinsurance amounts listed in the applicable plan description." The current state of the record contains disputed issues of material fact touching each of these claimed provisions. Moreover, this court is disinclined to address the merits of the parties rights and obligations under the PHS contract without that contract being properly before the court.
The defendants argue that the court in Gianetti v. Mulroney,
Superior Court, judicial district of Fairfield at Bridgeport, No. 290495 (1995), has already decided the issue of whether this plaintiff may collect his fee from settlement proceeds or whether the plaintiff must collect under the PHS plan. In Gianetti v.Mulroney, a case involving the present plaintiff, the court(Tobin, J.) held that Dr. Gianetti could not seek recovery from his patient's attorney, who possessed settlement proceeds stemming from the patient's underlying liability action, for the difference between the plaintiff's fee and the amount provided to him by PHS. The court in that case received the testimony of a PHS employee who testified that the plaintiff was a member of PHS and that PHS had already paid him for his services. The employee testified that the patient was not liable to the plaintiff for CT Page 5325-G the balance between the amount received by PHS and his usual fee according to the PHS plan. Based on this testimony, the court concluded that the plaintiff had already received payment from PHS and, pursuant to his agreement with this provider, the plaintiff was not entitled to any more funds, including the settlement funds held by the patient's attorney.
"Trial court cases, however, do not establish binding precedent. J.M. Lynne Co. v. Geraghty, 204 Conn. 361, 369,528 A.2d 786 (1987)." Statewide Grievance Committee v. Presnick,18 Conn. App. 316, 329, 559 A.2d 220 (1989). Moreover, there is an insufficient record in this case on which to find that the plaintiff is collaterally estopped by the findings of the court in Gianetti v. Mulroney. Indeed, it appears that this case is distinguishable from Gianetti v. Mulroney. Here, there is evidence that the plaintiff has not been paid by PHS. Also, the plaintiff attests in his affidavit that Joan McKeon told him to collect his fee from the liability carrier while Joan explains in her affidavit that she directed the plaintiff to obtain payment from PHS. Accordingly, various questions of material fact exist as to whether the plaintiff can recover his fee from the settlement proceeds possessed by Attorney Donahue or whether the plaintiff must, pursuant to the PHS agreement, seek recovery from PHS and not from the McKeons' settlement proceeds.
For these reasons, the plaintiff's motion for summary judgment against the defendants McKeon is denied.
 IV
The defendants McKeon have moved for summary judgment on the complaint and on the interpleader counterclaim. They contend that the statute of limitations has expired on the plaintiff's claims against them.
The plaintiff advances two causes of action against the McKeons.[6] First, the plaintiff claims that the McKeons breached an oral agreement to pay him for his services. The applicable statute of limitations for this claim is the six year limitation period contained in General Statutes § 52-576(a).[7]Gaylord Hospital v. Massaro, 5 Conn. App. 465, 466, 499 A.2d 1162
(1985).
 "While the statute of limitations normally begins to run immediately upon the accrual of the cause of action, some CT Page 5325-H difficulty may arise in determining when the cause or right of action is considered as having accrued. The true test is to establish the time when the plaintiff first could have successfully maintained an action. That is, an action cannot be maintained until a right of action is complete and, hence, the statute of limitations cannot run before that time. 51 Am.Jur.2d, Limitation of Actions § 107. `The settled rule that the statute of limitations begins to run upon the accrual of a cause of action applies in actions on implied and quasi contracts." Id., § 134. In an action for breach of contract, the cause of action is complete upon the occurrence of the breach, that is, when the injury has been inflicted. Kennedy v. Johns-Manville Sales Corporation, 135 Conn. 176, 180, 62 A.2d 771 (1948). In a contract where a defect in roof construction was discovered, a breach or injury is considered to have occurred only when the defective roof was completed. Beckenstein v. Potter Carrier, Inc., 191 Conn. 150, 158, 464 A.2d 18 (1983). Here, the right of action may be said to have accrued upon the completion of services rendered to the patient. . . ."
Id., 467. "`Where services are continuously rendered over an extended period of time under an express or implied contract which does not fix the term of employment nor the time when compensation shall be payable, many courts have regarded the contract as an entire one, raising an implied condition that the compensation shall not be due until the termination of the service, so that the statute of limitations will not begin to run against the claim for compensation until the employment is ended.' Annot., 7 A.L.R.2d 200." Id., 467-68. While there may be cases in which a condition precedent[8] to the accrual of a cause of action for medical services is the denial of a claim for insurance payment, the record fails to reflect that such was the case here.
The evidence establishes that the plaintiff completed treating their daughter on November 4, 1988. Since the plaintiff commenced this action on December 10, 1994, the plaintiff's action against the McKeons for breach of contract is barred by the six year limitations period.
The second cause of action asserted by the plaintiff against the McKeons sounds in unjust enrichment. "A right of recovery under the doctrine of unjust enrichment is essentially equitable, its basis being that in a given situation it is contrary to equity and good conscience for one to retain a benefit which has come to him at the expense of another. Franks v. Lockwood,
CT Page 5325-I146 Conn. 273, 278, 150 A.2d 215 [1959]; Schleicher v. Schleicher,120 Conn. 528, 534, 182 A. 162 [1935]. Connecticut National Bankv. Chapman, 153 Conn. 393, 399, 216 A.2d 814 [1966]." (Internal quotation marks omitted.) Hartford Whalers Hockey Club v.Uniroyal Goodrich Tire, 231 Conn. 276, 282, 649 A.2d 518 (1994), quoting Providence Electric Co. v. Sutton Place, Inc., 161 Conn. 242,246, 287 A.2d 379 (1971); see also, National CSS, Inc. v.Stamford, 195 Conn. 587, 597, 489 A.2d 1034 (1985); Pleines v.Franklin Construction Co., 30 Conn. App. 612, 618, 621 A.2d 759
(1993); Moran, Shuster, Carignan Knierim v. August,43 Conn. Sup. 431, 434, 657 A.2d 736 (1994), affirmed and adopted,232 Conn. 756, 657 A.2d 229 (1994); Restaurant Associates, Inc. v.Marsh, 38 Conn. Sup. 460, 463, 451 A.2d 289 (App. Sess. 1982);Hartford Accident Indemnity Co. v. Chung, 37 Conn. Sup. 587,594, 429 A.2d 158 (App. Sess. 1981); CBS Surgical Group, Inc. v.Holt, 37 Conn. Sup. 555, 557-58, 426 A.2d 819 (App. Sess. 1981). Because a right of recovery under the doctrine of unjust enrichment is essentially equitable, the statutes of limitation are not necessarily applicable. See Foley v. Estate of Coggins,121 Conn. 97, 100, 183 A. 25 (1936); Downey v. Guilfoile,96 Conn. 383, 385, 114 A. 73 (1921).[9]
The plaintiff's motion for summary judgment is denied. The motion of the defendants McKeon for summary judgment is granted as to the second count of the complaint and denied as to the third count.
BY THE COURT
Bruce L. Levin Judge of the Superior Court