STORM AND ASSOCIATES, LTD., Plaintiff-Appellant, v. DONALD CUCULICH *et al.*, Defendants-Appellees.

First District (5th Division) No. 1—98—0841

Opinion filed August 28, 1998.—Rehearing denied September 24, 1998.

Timothy J. Storm, of Chicago, for appellant.

Krasnow, Sanberg & Cohen, of Chicago (Colby M. Green, of counsel), for appellees.

PRESIDING JUSTICE HOFFMAN delivered the opinion of the court:

The plaintiff, Storm & Associates, Ltd. (Storm), appeals from an order of the circuit court dismissing its four-count amended complaint. For the reasons that follow, we affirm the dismissal of count II, reverse the dismissal of counts I, III and IV, and remand this cause to the circuit court with directions and for further proceedings consistent with this opinion.

From the allegations contained in Storm's amended complaint (complaint), it appears that the defendants, Donald and Nancy Cuculich, were the named plaintiffs in a class action suit pending in the circuit court of Cook County (hereinafter referred to as the Class Action) and were being represented in that action by Marshall Patner (Patner) and Marshall Patner & Associates, P.C. (collectively referred to as the Patner Defendants). While the Class Action was pending and after the class had been certified, Patner retained Storm to act as co-counsel. Storm accepted the engagement on a contingent fee basis which was memorialized in a letter. Thereafter, Storm filed its appearance as additional counsel for the Cuculichs.

Storm alleges that it performed legal services on behalf of the Cuculichs at Patner's direction prior to its engagement as co-counsel being terminated "without cause." After the defendants refused to compensate Storm for the legal services it rendered as co-counsel in the Class Action, Storm instituted the instant action.

Count I of Storm's complaint is a *quantum meruit* claim against the Cuculichs for the value of the legal services it rendered and expenses it incurred as co-counsel in the Class Action. This count is premised upon the allegation that Patner acted as the Cuculichs' agent in both retaining and terminating Storm. Count II of the complaint asserts a claim against the Patner Defendants for breach of an agreement in which they allegedly guaranteed payment of Storm's fees. In support of this count, Storm attached to the complaint a copy of a handwritten note that is signed by Patner and that provides in relevant part: "As I said in my phone message, I will protect your hours. But you did not include them with your letter; will you please do so, at your convenience."

Count III purports to state a claim for tortious interference with contract against the Patner Defendants, alleging that they "intentionally and with malice caused or induced" the Cuculichs to terminate Storm "without cause or justification." In count IV of its complaint, pled in the alternative to counts I, II and III, Storm asserts a *quantum meruit* claim against the Patner Defendants for the value of the legal services it rendered and the expenses it incurred as co-counsel in the Class Action.

The defendants responded to Storm's complaint with a combined motion to dismiss pursuant to section 2—619.1 of the Code of Civil Procedure (Code) (735 ILCS 5/2—619.1 (West 1996)). As to counts I and IV, the defendants argued that: (1) the services Storm rendered did not confer any benefit upon the defendants individually, and (2) Storm was not yet entitled to recover any attorney fees because the Class Action was still pending and no fund had been created from which those fees could be paid. As to count II, the Patner Defendants claimed that: (1) the action was barred by the provisions of section 1 of the Frauds Act (740 ILCS 80/1 (West 1996)), and (2) the writing upon which Storm relied was not a guaranty as it contained no promise to pay any debt or obligation owed by the Cuculichs. In support of the dismissal of count III, the defendants argued that "[a]n agent is not liable for wrongfully interfering with its principal's contract since the acts of the agent are imputed to the principal."

In its memorandum in opposition to the defendants' motion to dismiss, Storm addressed the merits of the motion as it related to counts I, II and IV of the complaint. Storm argued that dismissal of

count III was premature prior to discovery and objected to the defendants' failure to specify whether they sought dismissal of counts I, II and IV under section 2—615 (735 ILCS 5/2—615 (West 1996)) or section 2—619 (735 ILCS 5/2—619 (West 1996)) of the Code.

The trial court entered a "Final Judgment Order," granting the defendants' motion to dismiss. Thereafter, Storm filed a timely notice of appeal, invoking our jurisdiction under Supreme Court Rule 301 (155 Ill. 2d R. 301).

■ Section 2—619.1 of the Code is a procedural statute that allows a litigant to combine a section 2—615 motion to dismiss and a section 2—619 motion for involuntary dismissal in one pleading. 735 ILCS 5/2—619.1 (West 1996). However, this statute is not a legislative authorization for hybrid motion practice. Section 2—619.1 specifically provides that a combined motion shall be divided into parts and each part shall be limited to and specify a single section of the Code under which relief is sought. 735 ILCS 5/2—619.1 (West 1996). Meticulous practice dictates that the movants clearly state the section of the Code under which a motion to dismiss is brought. *Illinois Graphics Co. v. Nickum*, 159 Ill. 2d 469, 484, 639 N.E.2d 1282 (1994).

■ Other than in part III of their motion, which is directed to count III of Storm's complaint, the defendants here failed to specify whether they sought relief under section 2—615 or section 2—619 of the Code. While failure to properly label a motion to dismiss is not a pleading practice that should be encouraged, reversal for such a deficiency is appropriate only when prejudice to the nonmovant results. *Illinois Graphics Co.*, 159 Ill. 2d at 484. In reviewing the propriety of a dismissal resulting from an undesignated motion, we will examine the grounds for the motion, the relief requested and the treatment of the motion below to determine whether the motion is properly classified as one brought under section 2—615 or section 2—619. *Illinois Graphics Co.*, 159 Ill. 2d at 484. Where, as in this case, the trial court fails to specify the grounds upon which it relied in granting a motion to dismiss, we will presume it was upon one of the grounds urged by the defendant. *Zielinski v. Miller*, 277 Ill. App. 3d 735, 739, 660 N.E.2d 1289 (1995).

■ A section 2—615 motion attacks the sufficiency of a complaint and raises the question of whether it states a cause of action upon which relief can be granted. *Burdinie v. Village of Glendale Heights*, 139 Ill. 2d 501, 505, 565 N.E.2d 654 (1990); *Janes v. First Federal Savings & Loan Ass'n*, 57 Ill. 2d 398, 406, 312 N.E.2d 605 (1974). When ruling on a section 2—615 motion, the court may only consider the facts apparent from the face of the complaint, matters of which the court may take judicial notice, and judicial admissions in the record.

*Mt. Zion State Bank & Trust v. Consolidated Communications, Inc.*, 169 Ill. 2d 110, 115, 660 N.E.2d 863 (1995).

■ A section 2—619 motion raises certain defects or defenses and poses the question of whether the defendant is entitled to judgment as a matter of law. *Illinois Graphics Co.*, 159 Ill. 2d at 485, 494. If the grounds for such a motion do not appear on the face of the complaint, the motion must be supported by affidavit. 735 ILCS 5/2—619(a) (West 1996). When, however, the only grounds for a section 2—619 motion appear on the face of the complaint, the motion falls "within the area of confluence" between section 2—615 and section 2—619 (*Illinois Graphics Co.*, 159 Ill. 2d at 486), and the appropriate method for reaching the defect is a section 2—615 motion (*Rowan v. Novotny*, 157 Ill. App. 3d 691, 693-94, 510 N.E.2d 1111 (1987); Ill. Ann. Stat., ch. 110, par. 2—619, Historical & Practice Notes, at 662 (Smith-Hurd 1983)).

■ In this case, the defendants supported their combined motion with an affidavit attesting to matters of record in the Class Action. However, we deem that affidavit to be surplusage as everything contained therein is the proper subject of judicial notice. See *People v. Jackson*, 182 Ill. 2d 30, 66, 695 N.E.2d 391 (1998).

■ ■ In ruling on a motion to dismiss under either section 2—615 or section 2—619 of the Code, the court must accept all well-pled facts in the complaint as true and draw all reasonable inferences from those facts in favor of the plaintiff. See *Miner v. Gillette Co.*, 87 Ill. 2d 7, 19, 428 N.E.2d 478 (1981); *Your Style Publications, Inc. v. Mid Town Bank & Trust Co.*, 150 Ill. App. 3d 421, 424, 501 N.E.2d 805 (1986); *Holubek v. City of Chicago*, 146 Ill. App. 3d 815, 817, 497 N.E.2d 348 (1986). Because the resolution of either motion involves only a question of law, our review is *de novo*. *Stephen L. Winternitz, Inc. v. National Bank*, 289 Ill. App. 3d 753, 755, 683 N.E.2d 492 (1997). Further, since, in support of their motion to dismiss counts I, II and IV, the defendants relied on nothing other than the facts alleged in Storm's complaint and matters of which judicial notice can be taken, we find that Storm suffered no prejudice by reason of the defendants' failure to properly designate the section of the Code under which the dismissal of these counts was sought. Consequently, we will address the merits of the trial court's dismissal of each count of Storm's complaint.

The Cuculichs sought dismissal of the *quantum meruit* claim asserted against them in count I on the basis that Storm had conferred no benefit upon them individually and that its right to fees, if any, was contingent upon the ultimate success of the Class Action and the creation of a fund for payment of attorney fees. Storm argues that its

right to seek recovery for the reasonable value of its legal services accrued immediately upon its discharge as co-counsel. Central to our resolution of this issue is the applicability of the holding in *In re Estate of Callahan*, 144 Ill. 2d 32, 578 N.E.2d 985 (1991), to the rights of a discharged attorney originally engaged to represent the plaintiffs in a class action suit.

■ In *Callahan*, our supreme court held that a cause of action for *quantum meruit* fees accrues in favor of an attorney engaged to represent a client on a contingent fee basis immediately upon discharge and prior to the resolution of the client's lawsuit. *Callahan*, 144 Ill. 2d at 37-42. The defendants argue that, while this rule is applicable to the circumstance where a single client discharges an attorney retained on a contingent fee basis, it has no application to the rights of a discharged attorney retained to represent members of a class. They contend that Illinois adheres to the "common fund doctrine," under which an attorney's right to fees in a class action is contingent upon the ultimate success of the litigation and the creation of a fund from which those fees can be paid. See *Fiorito v. Jones*, 72 Ill. 2d 73, 377 N.E.2d 1019 (1978); *Hamer v. Kirk*, 64 Ill. 2d 434, 356 N.E.2d 524 (1976). The defendants reason that, since class action suits are maintained for the benefit of all class members, the costs of litigation should be paid from the common fund so as to spread them proportionately among those who benefit from the litigation.

The defendants are correct in their assertion that Illinois adheres to the "common fund doctrine." However, we believe their reliance upon that doctrine is misplaced under the circumstances of the instant case.

■ Our supreme court analyzed the "common fund doctrine" and revisited its origin and the rationale behind its application in *Brundidge v. Glendale Federal Bank, F.S.B.*, 168 Ill. 2d 235, 238, 659 N.E.2d 909 (1995), explaining:

> "Illinois has long adhered to the general American rule that the prevailing party in a lawsuit must bear the costs of litigation, unless a statutory provision or an agreement between the parties allows the successful litigant to recover attorney fees and the expenses of suit. [Citations.] However, where the outcome of the litigation has created a common fund, this court has adopted the 'common fund doctrine.' [Citations.] The common fund doctrine allows one who 'creates, preserves, or increases the value of a fund in which others have an ownership interest to be reimbursed from that fund for litigation expenses incurred, including counsel fees.' [Citations.] The doctrine finds its source in the court's inherent equitable powers [citation] and is founded on the rationale that successful

litigants would be unjustly enriched if their attorneys were not compensated from the common fund created for the litigants' benefit [citation]. By awarding fees payable from the common fund created for the benefit of the entire class, the court spreads the costs of litigation proportionately among those who will benefit from the fund. [Citations.]"

There is no doubt that, as the defendants argue, a number of reported cases have denied claims for the payment of attorney fees incurred on behalf of successful litigants in class action suits due to the absence of a common fund from which those fees could be paid. See *Hamer*, 64 Ill. 2d at 440-41; *Client Follow-Up Co. v. Hynes*, 105 Ill. App. 3d 619, 628-29, 434 N.E.2d 485 (1982). The defendants also correctly quote the court in *Fiorito v. Jones*, 72 Ill. 2d 73, 87, 377 N.E.2d 1019 (1978), when they argue that, "in a class action, the right to attorneys' fees is contingent upon ultimate success and upon the presence of a fund from which fees can be paid." However, a closer examination of these cases reveals that they involve: (1) a request for an award of fees against either the defendants or the class members when, although the plaintiffs were successful in their class action, no fund had been "brought into court" (*Hamer*, 64 Ill. 2d at 440-41; *Client Follow-up Co.*, 105 Ill. App. 3d at 629; see also *Hoffman v. Lehnhausen*, 48 Ill. 2d 323, 329, 269 N.E.2d 465 (1971)); or (2) an analysis of the various factors to be used by a court in determining the amount of reasonable fees it will order to be paid from the common fund created for the benefit of the entire class (*Fiorito*, 72 Ill. 2d at 87-94). These cases do not address the rights of a discharged attorney as against the individual class representative who engaged him. To be sure, a class action is not "the usual contingent-fee case." *Flynn v. Kucharski*, 59 Ill. 2d 61, 66, 319 N.E.2d 1 (1974). It is distinguished by the fact that neither the attorney-client relationship nor the attorney's fee is the result of a voluntary agreement between the attorney and the class members as a group. However, the same cannot be said of the relationship between the attorney and the class representative. While it is true that the attorney's fee in a class action suit is set by the court, the attorney-client relationship between the attorney and the class representative is purely voluntary.

■ The rationale underlying the holding in *Callahan* is no less compelling when, as in this case, the discharged attorney was engaged on a contingent fee basis to represent the plaintiffs in a class action suit. Once the class representative discharges the attorney, the contract governing their relationship ceases to exist and the contingency term is no longer operative. Additionally, the value of the attorney's services rendered prior to discharge cannot be measured by

the results obtained by another attorney, nor can the attorney's right to compensation for those services be made contingent upon the success or failure of another attorney. See *Callahan*, 144 Ill. 2d at 39-41. Recognition of a cause of action for *quantum meruit* fees in favor of a discharged attorney against the individual class representative that retained the attorney's services in a class action suit is nothing more than an acknowledgement of the implied promise of a recipient of services to pay for those services which are of value to him. See *Callahan*, 144 Ill. 2d at 40. The question of whether the class representative derived a benefit from the services rendered by the discharged attorney during the attorney's period of employment is a factor to be considered in measuring the reasonable value of those services. See *Callahan*, 144 Ill. 2d at 41. That question is one of fact and is, therefore, inappropriate for resolution on a motion to dismiss.

In accord with our recent decision in *Much, Shelist, Freed, Denenberg & Ament, P.C. v. Lison*, 297 Ill. App. 3d 375, 696 N.E.2d 1196 (1998), we reject the defendants' arguments and find that count I of Storm's complaint states a cause of action against the Cuculichs for *quantum meruit* fees. Consequently, we reverse the trial court's dismissal of count I.

Next, we address the propriety of the trial court's dismissal of count II of Storm's complaint, which alleges a cause of action against the Patner Defendants for breach of a guaranty agreement.

The Patner Defendants argued that count II must be dismissed because any contract to answer for the debt of another must be in writing pursuant to section 1 of the Frauds Act (740 ILCS 80/1 (West 1996)). They pointed out that the writing upon which Storm relied contained only a promise to "protect [Storm's] hours," but failed to contain either a promise to pay a debt or obligation owed by the Cuculichs or the terms and conditions of the undertaking. We agree.

If, as Storm alleges, the Patner Defendants agreed to guarantee payment of its fees and become liable for the payment of those fees in the event that the Cuculichs failed to pay, the agreement is one to answer for the debt of another. Section 1 of the Frauds Act bars any action upon such an undertaking "unless the promise or agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or some other person thereunto by him lawfully authorized." 740 ILCS 80/1 (West 1996). The issue then becomes whether the writing upon which Storm relies is sufficient to satisfy the requirements of the statute.

A writing relied upon to satisfy the requirements of the Frauds Act must itself show the existence of a contract and its terms and

conditions. *Culbertson v. Carruthers*, 66 Ill. App. 3d 47, 54, 383 N.E.2d 618 (1978). Even if the Patner Defendants' agreement to "protect" Storm's "hours" could reasonably be interpreted as an undertaking to guarantee payment of its fees, the writing does not identify the fees referred to, specify the amount guaranteed or the method by which that sum would be determined, or set forth the event that would trigger an obligation to pay. We find that the writing attached to count II of Storm's complaint fails to satisfy the requirements of section 1 of the Frauds Act (see *Chapman v. Freeport Securities Co.*, 174 Ill. App. 3d 847, 854-55, 529 N.E.2d 6 (1988)), and, therefore, affirm the trial court's dismissal of count II.

The Patner Defendants sought dismissal of count III, in which Storm asserted a claim for tortious interference with contract against them, pursuant to section 2—615 of the Code. Their only argument before the trial court in support of their motion to dismiss that count was their contention that "[a]n agent is not liable for wrongfully interfering with its principal's contract since the acts of the agent are imputed to the principal." In response, Storm argued that the count should not be dismissed before discovery as "a jury may find that Patner was not acting as agent for the Cuculichs at the time plaintiff was discharged."

At the outset, we reject Storm's argument that the defendants' section 2—615 motion to dismiss count III was premature before discovery. The question of whether a complaint states a cause of action is determined based on the facts alleged therein and the reasonable inferences favorable to the plaintiff which can be drawn from those facts. *Geick v. Kay*, 236 Ill. App. 3d 868, 873, 603 N.E.2d 121 (1992). The question is one of law, not fact. Either the complaint contains factual allegations in support of each element of the claim that the plaintiff must prove in order to sustain a judgment or it does not. *Schuler v. Abbott Laboratories*, 265 Ill. App. 3d 991, 994, 639 N.E.2d 144 (1993). The notion that plaintiffs are permitted to plead an action against a defendant before they are possessed of sufficient information to satisfy each element of the claim runs counter to Supreme Court Rule 137, which requires that all pleadings be well grounded in fact to the best of the pleader's knowledge, information and belief after reasonable inquiry. 155 Ill. 2d R. 137.

We also reject the argument upon which the Patner Defendants premised their motion to dismiss count III. The proposition that an agent can never be held liable for wrongfully interfering with his principal's contracts is far too broad. Even in circumstances where an agent is cloaked with a qualified privilege, a claim for tortious interference may lie where the agent's actions in interfering with the

principal's contract are unjustified or malicious, such as where the agent's conduct is totally unrelated or antagonistic to the principal's interests. *HPI Health Care Services, Inc. v. Mt. Vernon Hospital, Inc.*, 131 Ill. 2d 145, 156-59, 545 N.E.2d 672 (1989).

■ Although we have rejected the broad proposition upon which the Patner Defendants sought dismissal of count III, we believe that further analysis of the count is necessary. Count III of Storm's complaint is captioned "Interference with Contractual Relations." An action for tortious interference with a contract which is terminable at will, however, is classified as one for intentional interference with prospective economic advantage. *Anderson v. Anchor Organization for Health Maintenance*, 274 Ill. App. 3d 1001, 1013, 654 N.E.2d 675 (1995). Since the attorney-client relationship is terminable at will (*LaRocco v. Bakwin*, 108 Ill. App. 3d 723, 727-28, 439 N.E.2d 537 (1982)), the claim asserted in count III of Storm's complaint is more properly classified as one for intentional interference with prospective economic advantage (*Anderson*, 274 Ill. App. 3d at 1013).

■ Count III of Storm's complaint alleges that, at all times relevant, the Patner Defendants acted as counsel for the Cuculichs in the Class Action. The existence of an attorney's fiduciary relationship with his client gives rise to a qualified privilege in favor of the attorney to advise the client without fear of personal liability to third persons if that advice later proves to be incorrect. *Salaymeh v. Interqual, Inc.*, 155 Ill. App. 3d 1040, 1045, 508 N.E.2d 1155 (1987). When, as in this case, the existence of a privilege in favor of the defendant is apparent on the face of a claim for tortious interference with prospective economic advantage, it is the plaintiff's burden to plead and prove that the defendant's conduct was unjustified or malicious. *Fellhauer v. City of Geneva*, 142 Ill. 2d 495, 512, 568 N.E.2d 870 (1991).

■ Storm alleged that the Patner Defendants "intentionally and with malice caused or induced" the Cuculichs to terminate Storm "without cause or justification." A complaint, however, may not rest on mere unsupported factual conclusions. *J. Eck & Sons, Inc. v. Reuben H. Donnelley Corp.*, 213 Ill. App. 3d 510, 515, 572 N.E.2d 1090 (1991). Illinois is a fact-pleading jurisdiction. *Knox College v. Celotex Corp.*, 88 Ill. 2d 407, 426-27, 430 N.E.2d 976 (1981). Conclusions of fact will not suffice to state a cause of action regardless of whether they generally inform the defendant of the nature of the claim against him. *Adkins v. Sarah Bush Lincoln Health Center*, 129 Ill. 2d 497, 519-20, 544 N.E.2d 733 (1989).

■ Storm's conclusory allegations standing alone are insufficient to satisfy its burden to set forth factual allegations from which it could be reasonably inferred that the conduct of the Patner Defendants

in inducing the Cuculichs to discharge Storm was unjustified or malicious. *HPI Health Care*, 131 Ill. 2d at 158. The bare conclusions that the Patner Defendants acted intentionally, maliciously, and without cause or justification are insufficient to negate the protection of the privilege arising by reason of the attorney-client relationship here. *Philip I. Mappa Interests, Ltd. v. Kendle*, 196 Ill. App. 3d 703, 708-09, 554 N.E.2d 1008 (1990). Consequently, we find that count III of Storm's complaint fails to state a cause of action.

■ Although we may affirm the dismissal of a complaint on any ground apparent from the record, even one not relied upon by the trial court (*Material Service Corp. v. Department of Revenue*, 98 Ill. 2d 382, 387, 457 N.E.2d 9 (1983)), we decline to affirm the dismissal of count III on the ground that it fails to state a cause of action. It would be inappropriate for us to do so because that deficiency was not addressed by the parties before either the trial court or this court and because it may be correctable by amendment. *Geaslen v. Berkson, Gorov & Levin, Ltd.*, 155 Ill. 2d 223, 230-31, 613 N.E.2d 702 (1993); *Keating v. Estate of Golding*, 277 Ill. App. 3d 953, 957-58, 661 N.E.2d 541 (1996). Having determined that the Patner Defendants were not entitled to a dismissal of count III based on the arguments set forth in their motion to dismiss, we reverse the trial court's dismissal of that count. However, because we find the complaint to be factually deficient as discussed above, we instruct the trial court on remand to strike count III and afford Storm a reasonable opportunity to amend it.

Lastly, we will address the dismissal of count IV of Storm's complaint, in which it asserted a *quantum meruit* claim against the Patner Defendants. The Patner Defendants sought dismissal of count IV on the same grounds argued by the Cuculichs in support of dismissal of the *quantum meruit* claim asserted against them in count I. Consequently, for the same reasons stated in support of our reversal of the dismissal of count I, we also reverse the dismissal of count IV. As was the case with count III, however, we have also identified a serious pleading deficiency in count IV which merits further analysis.

■ It has been long settled in Illinois that, when an agent entering into a contract with another discloses both his agency status and the name of his principal or when the party dealing with the agent knows that the agent is acting for his principal in making a contract, the agent is not liable on the contract unless he agrees to become personally liable. *Chicago Title & Trust Co. v. De Lasaux*, 336 Ill. 522, 526, 168 N.E. 640 (1929). As the court observed in *Clark v. Maddux*, 118 Ill. App. 3d 546, 548-49, 454 N.E.2d 1179 (1983), this rule has been applied in a number of cases involving attorneys. See *Petrando v. Barry*, 4 Ill. App. 2d 319, 322-23, 124 N.E.2d 85 (1955); *International*

1054

*Service Corp. v. Ooms*, 105 Ill. App. 2d 391, 395-96, 245 N.E.2d 571 (1969); *McCorkle v. Weinstein*, 50 Ill. App. 3d 661, 663-64, 365 N.E.2d 953 (1977); *Associated Claims Service, Inc. v. Rinella & Rinella*, 79 Ill. App. 3d 1023, 1027-28, 398 N.E.2d 1211 (1979).

The factual allegations in count IV of Storm's complaint establish it was aware that the Patner Defendants were serving as counsel for the Cuculichs when they retained Storm to act as co-counsel. Therefore, it is clear that Storm knew of the Cuculichs' identity and the Patner Defendants' status as their attorneys at the time it agreed to serve as co-counsel. Further, count IV contains no allegations which indicate that the Patner Defendants agreed or intended to become personally liable for the payment of Storm's fees. Although we find that count IV fails to state a cause of action against the Patner Defendants, we decline to affirm its dismissal for the same reasons that we declined to affirm the dismissal of count III. We reverse the trial court's dismissal of count IV but direct the trial court on remand to also strike count IV and afford Storm a reasonable opportunity to amend it.

In summary, we reverse the trial court's dismissal of counts I, III and IV of Storm's amended complaint, affirm its dismissal of count II, and remand this action to the circuit court with instructions to strike counts III and IV and afford Storm a reasonable opportunity to amend those counts and for further proceedings consistent with this opinion.

Affirmed in part, reversed in part and remanded with directions.

THEIS and HOURIHANE, JJ., concur.